## SWEATMAN *et al.* v. CITY OF DEADWOOD.

1. A proposition, made by the owner of property to a city, to change the location of a street across such property, and its acceptance by the city council, and the making of the proposed change, constitutes a dedication of the ground occupied by the street as relocated.

2. M. purchased certain city property with money furnished by plaintiffs, but took the title to himself, and retained it some two months, before conveying it, with other property, to plaintiffs. While he held the title and his deed was of record, on a proposition made by him to the city council, he was permitted to change the location of a street across the property, the city relinquishing the ground formerly occupied, and a large amount of money was thereafter expended by the city in improving the street, and by others in improvements and buildings with reference thereto.    *Held*, that plaintiffs, having delayed 18 months, after knowledge of the facts, before notifying the city of their ownership of the property, and that the change in the street was unauthorized by them, could not recover the ground dedicated by M. for the new street, by his proposition to the city and its acceptance.

(Opinion filed Dec. 11, 1896.)

Appeal from circuit court, Lawrence county.    Hon. LORING E. GAFFY, Judge.

Action in ejectment.    Defendant had judgment, and plaintiff appeals.    Affirmed.

The facts are stated in the opinion.

*Edwin Van Cise,* for appellants.

There was no valid dedication of the premises to public use.    (1) Miller was without power to dedicate.    9 How. (U. S.) 10; Angell, Highways, 147; 2 Dillon Mun. Corp., § 498; 5 Am. & Eng. Encyc. of Law, 398; Bushnell v. Scott, 21 Wis. 457; Wirt v. McEnery, 21 Fed. 233; Church v. City of Portland, 22 Pac. 528; Gosselin v. Chicago, 103 Ill. 623; Lee v. Lake, 14

Mich. 12; Shellhouse v. State, 11 N. E. 485; Village v. Stewart, 41 N. W. 1046; Warren v. Brown, 47 N. W. 633; Neff v. Smith, 58 N. W. 1072. (2) The city was charged with notice of plaintiff's ownership by the terms of Miller's proposition. Parker v. Randolph, 5 S. D. 549; Wickem v. Henthorn; 59 N. W. 276; Plowman v. Griffith, 53 N. W. 140; Steele v. Bank, 41 N. W. 564; Hume v. Franzen, 34 N. W. 490; Martin v. Morris, 22 N. W. 525; Oliver v. Piatt, 3 How. 333; May v. Le Claire, 11 Wall. 217; Dickerson v. Colgrove, 100 U. S. 578; Gest v. Packwook, 34 Fed. 368.

*W. G. Rice,* for respondent.

A primary condition of every valid dedication is that it shall be made by the owner of the fee. Angell on Highways, § 134; Post v. Pearsall, 20 Wend. 442; Elliott, Roads and Streets 90, 235; Smith v. Ferris. 6 Hun. 553; State v. Mayor, 32 N. J. L. 49; Davis v. Railroad, 11 Cush. 506; Hawkins v. County Comrs., 2 Allen 254; Lewis on Eminent Domain, 317. It is not essential to the validity of an express dedication that there should be any precise form or words used, or that there should be any written instrument; any language and any instrument evidencing an intention to set apart the land for public use, would bind the donor from the time of the acceptance by the public. Elliott, Roads and Streets, 90; Angell on Highways, §§ 142, 143. Plaintiffs are estopped from contending that Miller had no right to dedicate the premises. Elliott on Roads and Streets, 97; Bigelow on Estop. 491; Comp. Laws, § 4730.

FULLER, J. Based upon a claim of ownership, plaintiffs instituted this action in ejectment to recover from the defendant a portion of a city lot, described in the complaint, which is, and has been, occupied and used as a part of one of the public streets of the city of Deadwood, continuously, since about the 15th day of October, 1888. This appeal is by plaintiffs from a judgment in favor of the defendant, and from an order overruling a motion for a new trial.

The material facts, as found by the court and shown by the evidence, are, in effect, as follows:   On the third day of October, 1888, John Treber, while a member of the city council sold and by a grant, bargain, and sale deed, containing the usual and statutory covenants, conveyed the property in question to James K. P. Miller, who thereupon paid the consideration named therein, and caused said deed to be recorded in the office of the register of deeds.   On the 15th day of the same month Miller submitted to, and the city council accepted a writted pro-position by which he was permitted, at his own expense, to straighten the street upon which the lot in dispute was situated and thereby change the same, so as to include within its limits the triangular portion of said lot here in controversy, and necessitate the relinquishment by the city of an equal amount of land of similar shape, upon the opposite side of the street, which at the time constituted a portion thereof.   Thereafter and on the 14th day of December following, Miller executed and delivered to appellants a warranty deed to certain lots in the city of Deadwood, including the land in controversy, and said deed was duly recorded on the 17th day of that month.   It appears from the evidence that Mr. Miller submitted to appellants, who were residents of a distant state, an offer, in writing and by letter, to sell the land in controversy, together with other property adjacent thereto, and that an agreement to purchase the same was made and entered into, October 1, 1888, Miller being at the time authorized to draw on one of the appellants for the stipulated purchase price.   Concerning the matter.   Mr. Sweatman testified, in part, as follows:   "The draft for this especial piece of property was paid on the 9th of October, 1888.   *  *  *   We authorized him (Miller) to draw on us for the purchase price, as he might need the money. Mr. Miller, in pursuance of these instructions, forwarded a draft to me for $7,600.   *  *  *   We were to have a deed for this lot as soon as Mr. Miller could prepare it."   Both appellants testified that Miller had no authority from either of them

to dispose of the land in controversy, and that they were never advised of what had been done until some time in the month of May, 1890, about which date Mr. Ogden visited Deadwood, examined the property, and severely criticised Mr. Miller for his conduct relative to the use to which the land in controversy had been devoted. After the death of Mr. Miller, and on the 16th day of November, 1891, Mr. Ogden appeared before the city council of Deadwood, for the first time, and made a statement that Miller's action was entirely unauthorized, and thereupon a committee was appointed by the city council to investigate the matter and make a report. While $3,700 was the consideration agreed upon and paid by appellants to Miller for the lot, a portion of which is in controversy, and for which Miller made a draft, dated Deadwood, October 3, 1888, and which was paid by appellants on the 9th day of the same month, it is evident the Deadwood bank through which the business was transacted advanced to Miller on said draft, and at the time the same was drawn, the amount thereof, $2,000 of which Miller thereupon paid to Treber in full consideration for said lot and a deed from Treber to Miller, containing a recital of such consideration, was, upon said 3d day of October, 1888, filed in the office of the register of deeds, where it remained of record at the time Miller's express dedication was made and accepted by the city council, and while work was being done upon the street by Miller, pursuant to his proposal, in order to prepare the same, as thus changed, for use as a public thoroughfare. During all this time, and from the 3d day of October to the 14th day of December, appellants had constructive notice, and ever afterwards actual notice, that Miller had paid $2,000, instead of $3,700, of this money for the lot, had taken title to himself, and had conveyed said property to them, at an apparent profit of $1,700. Immediately after the 15th day of October, 1888, and more than 60 days prior to his deed to appellants, Miller removed certain buildings from the ground as part consideration for, and in conformity with, the terms of his dedication, appar-

ently under the direction of the city engineer, and began to perform work and expend money in preparing the street, as changed, for the use of the public, and in building a street-car track thereon. The city had also in accepting the proposition, vacated and relinquished all right to a similar tract, upon the opposite side of the street, which had theretofore constituted a part thereof; and, later, the city council was obliged to pay damages to the owner of contiguous property, occasioned by the change in the street already effected and in use by the public. Long before the city council or any member thereof had notice of appellants' claim, the street, as changed, was occupied in part by a street-car line; a locomotive railway passenger depot had been erected thereon with reference to the street as thus established; and the city had expended a large amount of money in keeping the street in repair, in adjusting its system of water-works thereto, and in constructing an iron bridge thereon.

It is obvious that appellants, by permitting Miller to take the deed in his own name, and hold the record title for months before conveying the property to them, made the injury occasioned by Miller's acts possible. Moreover, their delay until Miller had died, and one year and six months after visiting the city for the express purpose of seeing what had been done, but without notifying the city council in any manner, at that time, of the claim they now make, evidences, when considered with other circumstances, a lack of diligence upon the part of appellants which is worthy of notice. As the street was deeded over to the city, and Miller's motive and intent to expressly alienate, set apart, and dedicate the land in controversy to the use of the public for street purposes is so clearly ascertainable from his proposition in writing, signed and submitted to, and in due form accepted by, the city authorities, it would serve no good purpose to reproduce at length said proposition and the record made by the city council with reference thereto. Say the Elliotts, in their excellent treatise (Elliott, Roads & S. pp.

90, 91): ''It is not essential to the validity of an express dedication that there should be any precise form of words used, nor that there should be any written instrument. Any language, and any instrument indicating an intent to set apart the land for the public use, would bind the donor from the time of the acceptance by the public.'' The property in dispute is situated upon Lee street, and a plat showing that fact, together with the location of various other lots upon that street to be effected by the proposed change, was prepared by Miller and submitted to the city council with his proposition, which contains the following: ''I represent the owners of all the property on both sides of Lee street east of the bridge, excepting the brick building commonly known as the ''Times Building.'' And counsel for appellants contends that this recital was amply sufficient to charge the city with notice that appellants were the owners of the property, and that they were dealing with Mr. Miller as appellants' agent merely. Viewed in the light of the fact that Miller had but recently purchased the property from Treber, a member of the council present and acting, and had paid for it, and taken the title in his own name, and placed the deed of record, the foregoing statement is, in our opinion, scarcely sufficient to charge respondent with notice, or excite a suspicion that Miller was not what appellants had enabled him to appear to be, namely, the absolute and unqualified owner of the property. As against the assertion of title by apparent strangers out of possession, who have furnished to another the purchase price of real property, and suffered the latter to carry on all negotiations in his own name, to take and hold title in himself, and exercise all the rights of an absolute owner of the fee, municipal authorities are in the attitude of a *bona fide* purchaser, when they have honestly, in good faith, and without actual or constructive notice of an adverse claim, right, or equity, accepted on behalf of the city, from the grantee thus named in the deed of record, a portion of the land described therein, dedicated by such ostensible owner to the use of the

municipality as a public street, and have, in consideration therefor, and in connection therewith, expended money, performed acts, and surrendered valuable rights, by which the city would be placed in a worse position should the dedication be afterwards vacated and set aside. The transaction has all the essential elements of a *bona fide* purchase, to-wit, the presence of good faith, the absence of notice, and a valuable consideration. 2 Pom. Eq. Jur. 745; Webb, Record Titles, 202. One of the maxims of the law is that, if one of two innocent parties must suffer by the act of a third, he who enables the third to occasion the loss, must sustain it; and this maxim Prof. Pomeroy says, constitutes the bed rock of the doctrine of equitable estoppel. Comp. Laws, § 4730; 2 Herm. Estop. 1222. Appellants' claim is based upon a deed directly from Miller, executed more than two months after they had accepted his offer to sell, paid him the stipulated purchase price, with the tacit understanding that the property would be conveyed to them whenever it was convenient for said Miller to prepare a deed. Upon the fath of appearances, for which appellants were wholly responsible, the city authorities were justified in dealing with Mr. Miller as the absolute owner, or, at least, an interested person, having full authority to make the dedication complained of; and they cannot, in good conscience, though innocent of moral turpitude, be permitted to thus tardily repudiate his acts, to the great detriment of respondent. Elliott, Roads & S. p. 97; Brown v. Manning, 6 Ohio, 298; 2 Herm. Estop. p. 1280. A deliberate consideration of all the questions presented by the record and discussed by counsel leads us to the conclusion that no reversible error occurred at the trial in the court below. The judgment appealed from is therefore affirmed.