### FARR v. SEMMLER et al.

Under the statute of this state, a morgtage on real estate is not a conveyance of title, but only a lien on the land as security for a debt.

After foreclosure sale, the certificate still remains a lien only, till the time for redemption expires, and no title passes till the sheriff's deed has been issued, which, under Code Civ. Proc. §§ 653-662, invests the purchaser with the mortgagor's title.

Where an execution debtor's only right, title, or interest in land sold on execution against him is that acquired as a purchaser under a mortgage foreclosure sale, that is all that passes to the purchaser under the execution sale and sheriff's deed.

A quitclaim deed by one whose only right, title, or interest in the land conveyed is that of a purchaser under a mortgage foreclosure sale passes to his grantee no other right, title, or interest.

Where one claiming under a purchaser on a mortgage foreclosure sale negligently withheld from record the deed on foreclosure necessary to show his title, and stood by while parties in possession, claiming in good faith, under a subsequent foreclosure of a senior mortgage, improved and mortgaged the land and paid taxes for over 10 years, he is estopped to assert the invalidity of the foreclosure under which they claim.

One acquiring a claim to ownership of land by a quitclaim deed would stand in the shoes of his grantor as to an equitable estoppel against the latter to assert title against parties in possession.

That an inspection of the record might have revealed a defect in the title of the grantor of defendants, who had no actual notice, and honestly presumed their title good, would not prevent them from availing themselves of an equitable estoppel against plaintiff's grantor to assert the invalidity of such title, as the latter also had the same notice of the defect, and by Civ. Code, § 2415, he who acquiesces in error takes away the right of objecting to it.

"Asquiescence" means "to rest apparently satisfied without objection; a silent or passive assent."

(Opinion filed, Nov. 17, 1909.)

Appeal from Circuit Court, Douglas County. Hon. E. G. SMITH, Judge.

Suit by C. W. Farr against Karolina Semmler and another. From a judgment for defendants, plaintiff appeals. Affirmed.

*Walker* & *Gurley,* for appellant.   *French* & *Orvis,* for respondents.

McCOY, J.   This is a suit, commenced in September, 1906, to quiet title to a certain quarter section of land situated in Douglas county.   There is practically no dispute about the facts.   The question is what effect should be given to the evidence.   From the record it appears that on the 20th day of April, 1888, one Albert N. King was the owner in fee of the land in question, and on that day gave two certain mortgages thereon; one to Lombard Investment Company for $550, due May 1, 1893, filed for record April 29, 1888, and one to MacLagen & Pierce for $100, due November 1, 1890, and filed for record June 20, 1888; that the last mentioned was a commission mortgage, and by its terms made subsequent and junior to the Lombard mortgage. The plaintiff claims title under a foreclosure sale of the Mac-Lagen & Pierce mortgage made August 8, 1890, the certificate on such sale being issued to one John T. M. Pierce, the purchaser. Thereafter one Edmund A. Bruce obtained judgment in the circuit court against said Pierce, and levied on and sold the interest of said Pierce in and to said land, and on October 16, 1896, a sheriff's deed was issued to Bruce on such execution sale.   On December 4, 1895, said John T. M. Pierce gave to Bruce a quitclaim deed of all his right, title, and interest in and to said land. On July 10, 1906, Bruce executed and delivered to the plaintiff, C. W. Farr, a quitclaim deed of all his right, title, and interest in and to said real estate.   No redemption was ever made from either the mortgage or execution sale.   On the trial the plaintiff offered in evidence an assignment of the certificate of sale under the MacLagen & Pierce mortgage, executed by Edmund A. Bruce to plaintiff, and bearing date December 4, 1906, and to which offer the defendants objected because it had not been shown that Bruce was the owner of said certificate which was issued to Pierce, and that said certificate was incompetent and immaterial, and no foundation had been laid.   The objection was sustained, and the plaintiff excepted.   Plaintiff also offered in evidence a

sheriff's deed, under the MacLagen & Pierce foreclosure, given by the sheriff to the plaintiff on December 8, 1906, and to which offer the defendant objected because it was made subsequent to the commencement of this action; that no assignment of sheriff's certificate of sale given to Pierce has been proved to Farr, to whom the deed was given. The objection was sustained, and the plaintiff excepted.

The defendants claim title under a foreclosure sale by advertisement of the Lombard Investment Company mortgage, made October 5, 1895. On May 7, 1888, an assignment of the Lombard Investment Company mortgage was made to Rhoda F. Kinsman, executed and acknowledged by Louis Lombard, second vice president of the Lombard Investment Company, which assignment was recorded August 20, 1895. Rhoda F. Kinsman became the purchaser on such sale, and on February 17, 1897, no redemption having been made, a sheriff's deed was issued and given to Rhoda F. Kinsman, which was duly recorded February 19, 1897. That thereafter, on September 12, 1898, in consideration of $650 by warranty deed, Rhoda F. Kinsman conveyed the land in question to the defendant Karolina Semmler, and which deed was duly recorded October 28, 1898. It further appears that defendants and their grantor, Rhoda F. Kinsman, paid all taxes assessed against said land for the year 1895, and all subsequent years until the commencement of this action, and including the year 1905. That prior to February 11, 1897, the land in question was vacant and unoccupied, but on that date was taken possession of by Rhoda F. Kinsman, and by her peaceably possessed until she conveyed the same to defendants September 12, 1898, at which time the defendant took possession and commenced the improvement thereof. That defendants have built about two miles of fence on said land, and broken and reduced to a state of cultivation a large portion thereof, and have picked and hauled some 500 loads of stone therefrom. That at the time defendants purchased said land in September, 1898, the same was worth not to exceed $650, and that at the time of the commencement of this action the said land was worth $6,000. That the defendants and Rhoda F. Kinsman believed they had good title, and had no

actual notice of claim made thereto by plaintiff, or any other person, until about the time of the commencement of this action. That on September 18, 1902, defendants gave a mortgage on said land to one Shepard for $1,200, and which mortgage is still unpaid.

Findings and judgment in the circuit court were in favor of defendants. Plaintiff brings this cause to this court, alleging certain errors to have occurred on the trial, and also that the evidence is insufficient to sustain the findings and judgment. It is contended on the part of plaintiff that the court erred in sustaining the objections to the introduction in evidence of the assignment of the certificate of sale, given by Bruce to plaintiff, and sheriff's deed issued to plaintiff, under the MacLagen & Pierce foreclosure sale; while the defendant contends that plaintiff failed to show ownership in himself, and that the circumstances of the case are sufficient to estop plaintiff from maintaining this action regardless of whether the evidence on part of plaintiff was sufficient to show plaintiff's ownership. We are of the opinion that in this last contention the defendants are in the right, and that plaintiff, conceding that he has sufficient interest in the land in question to maintain an action of this character, still, by reason of the equitable estoppel shown, would not be permitted to maintain this action.

Under the statute of this state a mortgage upon real estate is not a conveyance of title, but only a lien upon the land as security for a debt. After a foreclosure sale the certificate still remains a lien only, until the time for redemption has expired, and no title is transferred until the sheriff's deed has been duly issued. It is the sheriff's deed that invests the purchaser at mortgage sale with the mortgagor's title. Section 653-662, Code Civ. Proc.; McGregor v. Pierce, 17 S. D. 51, 95 N. W. 281. It is clear that at the time this action was commenced plaintiff had no title to the land in question, of record or otherwise. Neither at any time did plaintiff's grantor, Bruce, ever have title to said land. The mortgage under which plaintiff claims by its express terms provides that it should be junior and subsequent to the mortgage under which defendants claim. This junior mortgage

was foreclosed first, and a certificate of sale issued to John T. M. Pierce, the purchaser, on August 8, 1890, and a deed might have been issued under this foreclosure sale on the 8th day of August, 1891, but which deed was not issued until December, 1906, more than 15 years after the same might have been issued. In 1895 Edmund A. Bruce commenced an action in the circuit court against John T. M. Pierce, and obtained a judgment, and made a levy upon all the right, title, and interest of Pierce in and to said land, and on the 8th day of July, 1895, the interest of Pierce in and to said land was sold to Bruce, and thereafter on the 16th day of October, 1896, a sheriff's deed was issued to Bruce under such execution sale. But as Pierce at that time had no right, title, or interest in said land to levy on or sell other than as acquired under the MacLagen & Pierce mortgage sale, no other right or title passed to Bruce under such execution sale and sheriff's deed. All that Bruce, by any possibility, could acquire under this execution sale and deed was Pierce's right as a purchaser under the MacLagen & Pierce foreclosure sale. In December, 1895, Pierce executed and delivered to Bruce a quitclaim deed of all his right, title, and interest therein, in and to said land; but, as Pierce at that time had no right, title, or interest therein other than as a purchaser on said foreclosure sale, no other right, title, or interest passed to Bruce by such quitclaim deed.

Conceding for the sake of argument only, and which is not necessary to decide in this case, that the execution sale deed and the quitclaim deed of Pierce to Bruce had the effect of an equitable assignment to Bruce of the certificate of foreclosure sale given to Pierce under the MacLagen & Pierce foreclosure, still all the right thus acquired by Bruce was the right to obtain a deed from the sheriff under the foreclosure of the MacLagen & Pierce mortgage. If Bruce in 1895, when he obtained his quitclaim deed, or in 1896 when he obtained his sheriff's deed on the execution sale, had caused the sheriff's deed on the MacLagen & Pierce foreclosure to have been issued and recorded, he and his grantee would occupy a vastly different position. An inspection of the title records at all times before December, 1906, would

have revealed no title in Bruce or plaintiff. It was the plain duty of Bruce to have had this deed issued and placed of record if he desired to rely thereon, and most especially so when he knew, or should have known, that Rhoda F. Kinsman and her grantees were claiming title and making valuable improvements under a foreclosure of the Lombard mortgage. By standing by and seeing the defendants improve the land and make valuable improvements thereon, and pay taxes for over 10 years, Bruce and his grantee should be estopped to assert title as against defendants. It is true Bruce placed his quitclaim deed from Pierce, and his sheriff's deed under the execution sale, on record, but neither of these conveyed any title, or connected him with the title of Albert N. King, as shown by the record itself. It took the sheriff's deed under the MacLagen & Pierce foreclosure to invest Bruce or his grantee with title, or to show record title in him. It was necessary for Bruce to connect himself with the title of King, the mortgagor, in order to show record title in himself. The very instrument that would have made this connection, and shown by the record title in Bruce, was through negligence kept from record to the detriment of the defendants. Numerous authorities sustain this view.

In Wampol v. Kountz, 14 S. D. 335, 85 N. W. 595, it is held that the real owner of land could not keep still where others were claiming the land under a forged deed. "Under the circustances the appellants were bound to know that some innocent purchaser was likely to be injured by their silence, and in equity, if not as a matter of law, they are guilty of laches. Neither affirmative acts or words, nor silence maintained with fraudulent intent to deceive, are indispensable elements of an equitable estoppel, and the authorities are substantially agreed upon the proposition that a party cannot with impunity seal his lips and remain in idleness for years irresponsive to the incessant demands of justice and good conscience. This favored doctrine of the courts justifies the use of the word 'conduct' in its broader meaning to prevent the assertion and enforcement of claims against a person who, relying in good faith upon the silence or inactivity of another, has thereby to his deteriment been lead to

change his position with reference to his title to property either real or personal. Thus the term 'conduct,' when applied to a person in its relation to the modern doctrine of equitable estoppel, embraces not only ideas conveyed by words either written or spoken and things actually done, but it includes the silence of such person and his omission to act as well." Pom. Eq. Jur. 802-804. In Sweatman v. Deadwood, 9 S. D. 380, 69 N. W. 582, it was held by this court that keeping silent for a period of 18 months was sufficient to create an equitable estoppel as against one who stood silently by and saw another purchase and expend money and make valuable improvements upon real estate, under the honest belief that he was the owner and had good title to the real estate in question. Herman on Estoppel, in the chapter entitled "Equitable Estoppel," §§ 937-987, lays down the rule that: "He who is silent when conscience requires him to speak shall be debarred from speaking when conscience requires him to keep silent." And again in the same chapter Herman says: "A person who, himself being the owner of property, under an unrecorded title, stands by and sees another purchase and make valuable improvements thereon in good faith, honestly believing that he is the true owner thereof, without objection, will not afterwards be allowed to assert his title." The case of Dimond v. Manheim, 61 Minn. 178, 63 N. W. 495, is a case very similar in many respects to the case at bar, where defendant claimed title under a defective mortgage foreclosure, where the defect was in the assignment of the mortgage, and it was held that plaintiff was estopped by his conduct from asserting the invalidity of the foreclosure. Hence we conclude that, by reason of the fact that Mr. Bruce withheld from record the sheriff's deed under the Mac-Lagen & Pierce foreclosure, which was the only and indispensable instrument that would have shown title in him from the mortgagor, Albert N. King, and which would have given notice to a subsequent purchaser that he claimed title thereunder, under all the circumstances of this case, he, and his grantee, the plaintiff, should be estopped from asserting the invalidity of the Lombard foreclosure. The plaintiff, having acquired his claim to ownership through a quitclaim deed from Bruce, would stand in the

same position as Bruce as to the equities of the case. Fowler v. Will, 19 S. D. 131, 102 N. W. 598.

It is contended by appellant that, the mortgage foreclosure proceedings being of record, the defendant might have discovered, by an inspection of the record, that the title of Rhoda F. Kinsman was void, and that defendants cannot now by reason thereof avail themselves of the doctrine of equitable estoppel. In this contention we are of the opinion that plaintiff is in error. The plaintiff's grantor had the same notice of this defect from the same source. Bruce had notice in 1895 of the defect in the assignment of the Lombard mortgage and the consequent defect or error in the foreclosure proceeding. He who acquiesces in error takes away the right of objecting to it. Civ. Code, § 2415. Acquiescence means "to rest apparently satisfied, without objection; a silent or passive assent." It is fair to conclude from the evidence in this case that Bruce abandoned all claim under the Mac-Lagen & Pierce foreclosure, and that he impliedly assented and acquiesced in the erroneous foreclosure of the Lombard mortgage. At the time of the conveyance to defendants an action to foreclose the Lombard mortgage might have been maintained and the defect cured. It was the conduct of Bruce in not paying taxes, and in not having the sheriff's deed issue, and in permitting defendants to take open and notorious possession of the premises, and improve and mortgage to same, that leads to the conclusion that he acquiesced in the Lombard foreclosure. And it appears from the evidence that defendants had no actual knowledge as to any defect in their title, but as a matter of fact honestly and in good faith presumed their title was good; that about the time defendants purchased said land they had the abstract of title examined, and shortly afterwards, when procuring a loan upon the premises from the state school fund, the abstract was examined and pronounced good, and that shortly thereafter, when defendants procured a second mortgage, the abstract was examined by an attorney and defendants advised that the same was good. Bruce and his grantee, the plaintiff, under the circumstances of this case, should not now be heard to say that the Lombard foreclosure is void.

Finding no error in the record the judgment of the circuit court is affirmed.

CORSON, J.    I concur in the judgment of affirmance without expressing any opinion upon all of the questions discussed by Mr. Justice McCOY.

SMITH, J., took no part in this decision.