Richard JUSTICE, et al., Appellants,

v.

VALLEY NATIONAL BANK, et al., Appellees.

No. 87–5339.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 20, 1987.

Decided June 15, 1988.

David O. Carter, Sioux Falls, S.D., for appellants.

James M. Wiederrich, Sioux Falls, S.D., for appellees.

Before HEANEY, JOHN R. GIBSON and WOLLMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

In July of 1986, a foreclosure judgment was entered on the farm of Richard and Bonnie Justice in South Dakota state court. Following the foreclosure sale, but before expiration of the state statutory redemption period, the Justices filed a petition and proposed a plan of reorganization under Chapter 12 of the bankruptcy code. 11 U.S.C.A. §§ 1230–1231 (West Supp.1987). The single issue presented by this appeal is whether a bankruptcy court may confirm a Chapter 12 plan which allows the debtor to pay the redemption price over a period of time, extending beyond that limited by state law. The Justices appeal from an order of the district court [1] affirming a bankruptcy court order which held, *inter alia*, that under Chapter 12 state law controls the rights of the parties regarding redemption, barring confirmation of such a plan. Because a foreclosure sale extinguishes the mortgage contract and works a substantial change in the relationship of the parties under state law, we hold that the provisions of Chapter 12 relating to the debtor's power to cure defaults and modify the rights of secured creditors are not applicable after a foreclosure sale has been held. We accordingly affirm the order of the district court.

The Justices operate and reside on a farm in Brookings County, South Dakota. On October 31, 1978, they borrowed $365,000 from the Prudential Insurance Company of America at an annual interest rate of 9.75 percent, and gave a mortgage on their farmland in return. The Justices fell behind in payments, and on April 22, 1986 Prudential commenced foreclosure proceedings in the Brookings County circuit court. *See* SDCL § 21–47–1 (1987). On July 7, 1986, the court entered a monetary judgment for Prudential and foreclosed the Justices' rights and interests in the farmland, subject to their statutory rights of possession and redemption. *See* SDCL § 21–47–13. The court also ordered that the land be sold at public auction. On August 11, 1986, the sheriff sold the farm to Prudential for $315,000 and awarded

1. The Honorable John B. Jones, United States District Judge for the District of South Dakota.

Prudential the certificate of sale. The Justices retained the right to redeem the property by paying Prudential $315,000 plus interest until August 11, 1987, unless they took steps to extend the redemption period. *See* SDCL §§ 21–52–1, –11, –12 (1987).

On February 17, 1987, without having redeemed the property or extended the statutory redemption period, the Justices filed a petition for reorganization under Chapter 12 of the bankruptcy code. On March 23, 1987, they proposed a plan of reorganization in which they offered to pay Prudential interest on an outstanding balance of $315,000 plus a reduction in principal of $9,733 during each of the three years of the plan. Thereafter, the Justices proposed to pay the balance over a twenty year period at an interest rate of ten percent per year with the principal reduced in equal annual installments. In this manner they proposed to gradually "redeem" the property, with Prudential retaining a secured position until all payments were completed.[2]

On April 3, 1987, the Justices brought a motion in bankruptcy court to permit them to use cash collateral, in which Valley National Bank held a security interest, for the purpose of operating their farm during the 1987 crop season. *See* 11 U.S.C. § 363(c)(2)(B). On April 15, the bankruptcy court dismissed the motion. The court held that under Chapter 12 state law controlled the rights of the parties regarding redemption, and that the Justices had failed to demonstrate that they would be able to redeem the land by August 11, 1987, as required by South Dakota law. As a result the Justices could not show that they would be in possession of the land at the expiration of the redemption period and could not offer "adequate protection" for the cash collateral under 11 U.S.C. § 1205. They therefore failed to qualify for use of the collateral under 11 U.S.C. § 363(e).

The Justices appealed to the district court, which affirmed the bankruptcy court's decision in an order dated July 21, 1987. The Justices then filed a notice of appeal to this court and moved before the district court for a stay pending appeal. The district court denied the motion. The Justices filed a similar motion before this court, and on August 11, 1987, the date the statutory redemption period was due to expire, we granted a temporary stay to allow Valley National and Prudential to respond. We then set the case for argument to decide whether *Johnson v. First National Bank of Montevideo,* 719 F.2d 270 (1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984), is applicable to this case and whether Chapter 12 permits a debtor to cure in these circumstances.[3]

The Justices do not seek relief under any of the provisions we reviewed in *Johnson;* their argument is based entirely on Chapter 12. Thus, although we have found *Johnson* instructive on general points of law, it does not control this case, and our analysis centers on the Justices' claim that Chapter 12 authorizes bankruptcy courts to extend state redemption periods.

The Justices point to 11 U.S.C. § 1222(b) as supporting their treatment of Prudential's claim.[4] The Justices argue that the

---

**2.** On May 12, 1987, the Justices filed a revised Chapter 12 plan, which is identical to the original plan in all respects relevant to this appeal. The revised plan was scheduled for confirmation hearing on June 11, 1987, but confirmation was placed on hold pending resolution of this appeal.

**3.** The parties do not contest the bankruptcy court's ruling regarding adequate protection on this appeal.

**4.** The relevant portions of section 1222(b) state:
 (b) Subject to subsections (a) and (c) of this section, the plan may—
 \* \* \* \* \* \*

(2) modify the rights of holders of secured claims, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
 (3) provide for the curing or waiving of any default;
 \* \* \* \* \* \*

(5) provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due \* \* \*.

power to "modify the rights" of claim-holders under subsection (2) includes authority to extend South Dakota's redemption period and defer Prudential's right to receive legal title and possession of the land. They also contend that the right to cure default under subsections (3) and (5) includes the ability to reverse the statutory acceleration of debt and return to pre-default conditions, at least until the state redemption period has expired. In both cases they claim that contrary state law provisions are preempted by section 1222(b). They argue more generally that in enacting Chapter 12, Congress intended to provide farmers with a uniform system of reorganization, and that sections 1222(b)(3) and (5) empower federal courts to create a federal right to cure default in these circumstances. We consider these arguments in turn.

### I.

■ The Justices first argue that section 1222(b)(2) empowers debtors to extend a state's redemption period and defer the right of the buyer at a foreclosure sale to receive legal title and possession of the land. The section provides that a plan may "modify the rights" of holders of secured or unsecured claims. 11 U.S.C. § 1222(b)(2). Unlike section 1322(b)(2) of Chapter 13, upon which it is based, section 1222(b)(2) does not prohibit debtors from modifying the rights of holders of "claims secured only by a security interest in real property that is the debtor's principal place of residence." 11 U.S.C. § 1322(b)(2). The Justices argue that by omitting this restriction from section 1222(b)(2), Congress deleted the only language limiting a debtor's ability to cure default and redeem property through a reorganization plan, and indicated its intent to provide home mortgage lenders with somewhat less protection under Chapter 12 than they enjoy under Chapter 13. On this basis the Justices argue that even though debtors may not extend statutory redemption periods in similar circumstances under section 1322(b)(2), see, e.g., In re Roach, 824 F.2d 1370, 1377–79 (3d Cir.1987), they should be allowed to do so under Chapter 12.

For several reasons, we do not believe that the statutory right of redemption is subject to modification under section 1222(b)(2). First, the Justices' proposed extension of the redemption period under subsection (b)(2) is barred by the express language of subsection (c), which states:

> Except as provided in subsections (b)(5) and (b)(9), the plan may not provide for payments over a period that is longer than three years unless the court for cause approves a longer period, but the court may not approve a period that is longer than five years.

11 U.S.C. § 1222(c). The Justices' payment plan extends over a period of twenty-three years, well beyond the five-year limit established for subsection (b)(2). The only relevant provision which might be read to authorize such a lengthy payment period is subsection (b)(5), which we examine below.

■ Second, application of section 1222(b)(2) in these circumstances would override the automatic extension provided by 11 U.S.C. § 108(b), rendering that section superfluous. See Johnson, 719 F.2d at 277–78. Section 108(b) incorporates "applicable nonbankruptcy law" which "fixes a period within which the debtor * * * may * * * cure a default, or perform any other similar act." 11 U.S.C. § 108(b)(1). We have held that section 108(b) is applicable to state statutory redemption periods. Johnson, 719 F.2d at 277–78. Section 108(b) provides an extension when the petition for reorganization is filed less than 60 days before expiration of the redemption period. 11 U.S.C. § 108(b)(2). The Justices do not qualify for this extension, however, because they filed their petition nearly six months before expiration of South Dakota's redemption period. In such circumstances, section 108(b) expressly remits the debtor to state law. We have said that "where one section of the Bankruptcy Code explicitly governs an issue, another section should not be interpreted to create an irreconcilable conflict." Johnson, 719 F.2d at 278. Nothing in the language or history of Chapter 12 indicates that section 1222(b)(2) was intended to override section 108(b).

■ Finally, we do not believe the absence of a restriction in section 1222(b)(2) on modifying the rights of home mortgagees calls for a different result. The restriction in section 1322(b)(2) refers to claims "secured only by a security interest," but in this case the foreclosure judgment and sale extinguished Prudential's security interest. *See In re Nelson,* 9 F.Supp. 657, 661 (D.S.D.1935); *American Fed. Sav. & Loan Ass'n v. Kass,* 320 N.W.2d 800, 804 (S.D.1982). A debtor who seeks to "modify the rights" of a home mortgagee who has repurchased property at a foreclosure sale is in reality attempting to modify the terms of the state court judgment and sale. Nothing in the language or history of subsection (2) or its predecessors suggests that Congress intended the provision to be used for that purpose, *cf. Roach,* 824 F.2d at 1377 (reaching similar conclusion under section 1322(b)(5)), nor do the Justices offer any arguments to that effect. Moreover, where Congress elsewhere intended bankruptcy courts to intrude in state judicial proceedings, it explicitly directed them to do so, using unambiguous language. *See, e.g.,* 11 U.S.C. § 362(a)(2). Indeed, Congress has in the past expressly provided farmers relief from foreclosures, *see Wright v. Vinton Branch of the Mountain Trust Bank,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937) (upholding amended Frazer–Lemke Act, ch. 792, 49 Stat. 943 (1935) (expired 1949)), and continues to do so as it sees fit, *see, e.g.,* Agricultural Credit Act of 1987, Pub.L. No. 100–233, §§ 610, 614, 615, 101 Stat. 1568, 1669–73, 1675–1682 (1988). For these reasons, we do not believe the authority to modify the rights of home mortgagees under section 1222(b)(2) should be extended to the rights of a lender who has obtained a foreclosure judgment and repurchased the property at a foreclosure sale.[5]

We hold that section 1222(b)(2) cannot provide relief after the mortgage contract has been dissolved and a foreclosure sale

has been held, except in accordance with state law.

## II.

■ The Justices' next argument is that a debtor's right to cure default under subsections (3) and (5) allows the debtor to return the obligation to pre-default status, although the debt may have been accelerated pursuant to state law. They argue that "[c]uring a default commonly means taking care of the triggering event and returning to pre-default conditions," *In re Taddeo,* 685 F.2d 24, 26–27 (2d Cir.1982), and that if debtors do not have the ability to "de-accelerate" mortgages in some circumstances, the cure provisions of Chapter 12 and their rehabilitative purposes may be frustrated. *See Roach,* 824 F.2d at 1377. They correctly state that Chapter 12 is patterned after Chapter 13, rendering Chapter 13 cases relevant to our interpretation of Chapter 12. They point out that each court of appeals confronted with the issue under Chapter 13 has decided that a home mortgage default may be cured after contractual acceleration of the full mortgage debt. *Roach,* 824 F.2d at 1374–77; *In re Terry,* 780 F.2d 894 (11th Cir.1985); *In re Glenn,* 760 F.2d 1428, 1442 (6th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *In re Clark,* 738 F.2d 869, 872–74 (7th Cir.1984); *Grubbs v. Houston First American Savings Association,* 730 F.2d 236, 237 (5th Cir.1984) (en banc); *Taddeo,* 685 F.2d at 26–27.

This case, however, involves more than a default and contractual acceleration clause. A judgment of foreclosure has been entered against the Justices, and their land has been sold pursuant to the judgment. Acceleration of the debt is a result of the statutory redemption provision, rather than a contractual clause. Thus far, no court of appeals confronting the issue under Chapter 13 has held that a home mortgage default may be cured during a redemption

---

5. It is not necessary in this case for us to consider the circumstances under which section 1222(b)(2) might afford the family farmer additional relief over section 1322(b)(2), nor do we express any opinion on Prudential's right to a

deficiency judgment or the Justices' ability to modify that right. We are concerned only with the rights of the Justices and Prudential regarding redemption.

period following a foreclosure sale, except in accordance with state law. *Roach,* 824 F.2d at 1377–79; *Glenn,* 760 F.2d at 1442; *In re Tynan,* 773 F.2d 177, 178 (7th Cir. 1985). *But cf. In re Ivory,* 32 B.R. 788, 790–91 (Bkrtcy.D.Or.1983). For the reasons set forth below, we conclude that the cure provisions of sections 1222(b)(3) and (5) have particular reference to contractual mortgage rights and are not applicable after a foreclosure sale has been held. State law therefore controls the rights of the parties regarding redemption.

■ Our analysis is governed by certain general principles of bankruptcy law. The Constitution empowers Congress to establish nationally uniform bankruptcy laws, and when Congress has chosen to exercise its authority, contrary provisions of state law must give way. However, state laws are suspended only to the extent of actual conflict with the federal bankruptcy system. *Johnson,* 719 F.2d at 273. In the absence of any conflict or unless some federal interest requires a different result, the law of the state where the property is situated governs questions of property rights. *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979); *Johnson,* 719 F.2d at 273–74.

■ We initially examine the cure provisions of section 1222(b) in the context of South Dakota law. *See Butner,* 440 U.S. at 54–55, 99 S.Ct. at 917–18. In South Dakota, "a foreclosure by action of a mortgage upon real estate operates as a complete extinguishment, satisfaction and payment of the debt secured by the mortgage." SDCL § 21–47–17 (1987). However, if the purchase price at the subsequent foreclosure sale is less than the full amount of the judgment debt, the mortgagor remains liable for the deficiency. SDCL § 21–47–16 (1987). Thus, "[a] real estate mortgage is extinguished after *both* the 'foreclosure of [the] mortgage and the sale of the mortgaged property[.]' " *Kass,* 320 N.W.2d at 804 (emphasis added) (quot-

ing *Duke v. Utica State Bank,* 52 S.D. 33, 35, 216 N.W. 580, 581 (1927)). *See Nelson,* 9 F.Supp. at 661. In place of the mortgage, South Dakota law provides the right of redemption, which is a creature of statute entirely distinct from the mortgage contract. *See Rist v. Anderson,* 70 S.D. 579, 19 N.W.2d 833, 835 (1945); *Nelson,* 9 F.Supp. at 661.[6]

■ To apply the relevant provisions of section 1222(b) in this context, we "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park N' Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985). The terms "cure" and "default" are nowhere defined in the bankruptcy code. However, as the Third Circuit recently emphasized, these terms are commonly understood to presuppose a contractual relationship. *Roach,* 824 F.2d at 1377. *See also Clark,* 783 F.2d at 872. In the context of South Dakota law, the debtor's right to cure a mortgage default under sections 1222(b)(3) and (5) would therefore expire when the mortgagee (or a third party) purchases the property at a foreclosure sale.

The Justices have not shown any "actual conflict" between these provisions of South Dakota law and section 1222(b) which would require us to override the state redemption scheme. *See Johnson,* 719 F.2d at 273. They argue that section 1222(b) contains no provisions limiting the right to cure, whereas under South Dakota law the right of redemption generally expires one year after a foreclosure sale. In fact, the right to cure under subsection (3) is limited to a maximum period of five years, 11 U.S.C. § 1222(c), and under subsection (5) cure must be effected "within a reasonable time." These provisions actually provide a better basis for a preemption argument, because they suggest some congressional intent to replace state time limitations on

---

**6.** Legal title passes to the purchaser when a sheriff's deed is issued, *Farr v. Semmler,* 24 S.D. 290, 123 N.W. 835, 837 (1909), after the redemption period has expired, SDCL § 15–19–24 (1987). At that time the purchaser also gains the right to possession of the land. SDCL § 21–47–13.

the right to cure with explicit federal guidelines. *See, e.g., Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 747–48, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985); *Jones v. Rath Packing Co.,* 430 U.S. 519, 525–26, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977).

■ A distinction must be drawn, however, between the contractual right to cure and the statutory right of redemption. As we have said, a foreclosure judgment and sale extinguish the contractual mortgage relationship, and a debtor who attempts to "cure default" after that time actually seeks modification of the state court judgment and sale. The arguments advanced against this position with respect to section 1222(b)(2) apply here, as well. *See supra* p. 1083. In our view, by using the terms "cure" and "default" without special definitions, Congress evidenced its intent to provide additional relief for defaulting mortgagors only as long as the contractual relationship continues, and to allow state law to control when that relationship is dissolved. Extinguishment of the mortgage contract works a substantial change in the relationship of the parties, and its significance is simply too great for us to presume that Congress overlooked this in drafting Chapter 12. The bankruptcy code generally distinguishes between contractual obligations and rights arising from judicial proceedings or by operation of statute, indicating congressional awareness of the differences between them.[7] We therefore see no conflict between the cure provisions of section 1222(b) and South Dakota's redemption scheme.

The Justices have also failed to identify any federal interests served by Chapter 12 which would allow us to read sections 1222(b)(3) and (5) as preempting provisions. *See Butner,* 440 U.S. at 55, 99 S.Ct. at 918.

They argue that Chapter 12 evinces a strong federal interest in providing more powerful remedial legislation for family farmers who were having difficulty reorganizing under the restrictions of Chapters 11 and 13. They correctly point out that Chapter 12 "alters those provisions [of Chapter 13] that are inappropriate for family farmers," including the home mortgage restriction of section 1322(b)(2), and omits several of the more complex and time-consuming provisions of Chapter 11. H.R. Conf.Rep. No. 958, 99th Cong., 2d Sess. 48, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5246, 5249. From this they argue that Chapter 12 generally should be interpreted more liberally than its predecessors, and that the right to cure in particular should be more expansively construed.

We are not persuaded by these arguments. To the extent that Chapter 12 seeks to provide more powerful relief to family farmers by simplifying federal reorganization procedure, its success cannot be affected by state law, but will depend on the extent to which it improves on Chapters 11 and 13. The procedural simplicity of Chapter 12 cannot be used as a basis for crediting it with more preemptive power than its predecessors. We recognize that Chapter 12 has a broad objective of helping the family farmer adjust his debts and keep his land, but such a general goal is of little help in our attempt to ascertain the precise meaning of sections 1222(b)(3) and (5), and it "certainly [does] not dictate that we stray from the natural reading" of those provisions. *Wisconsin Educ. Ass'n Ins. Trust v. Iowa State Bd.,* 804 F.2d 1059, 1064 (8th Cir.1986).

■ The somewhat limited legislative history of Chapter 12 is consistent with this conclusion. The Justices emphasize that

---

7. "*Security interest*" is defined in 11 U.S.C. § 101(37) as a "lien created by agreement," and "lien" is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation," 11 U.S.C. § 101(33). By contrast, "judicial lien" is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(32), and "statutory lien" is defined as a "lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute," 11 U.S.C. § 101(47). *See also Roach,* 824 F.2d at 1375–76 (interpreting 11 U.S.C. §§ 1123, 1322).

Chapter 12 "is designed to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land." 1986 U.S.Code Cong. & Admin.News at 5249. It is, however, a carefully balanced program. When Congress enacted Chapter 12 it was sensitive to the conflicting needs of family farmers and their lenders, and the common long-term interests of both groups. *See, e.g.,* 132 Cong.Rec. S15,075–76 (daily ed. Oct. 3, 1986) (statements of Sen. Thurmond and Grassley); 132 Cong.Rec. H9,000–01 (daily ed. Oct. 2, 1986) (statements of Rep. Edwards and Synar). Chapter 12 therefore "offers family farmers the important protection from creditors that bankruptcy provides while, at the same time, preventing abuse of the system and ensuring that farm lenders receive a fair repayment." 1986 U.S.Code Cong. & Admin.News at 5249. We cannot give extraordinary meanings to the terms of the statute, and thereby run the risk of upsetting the balance Congress has struck, without a clear congressional directive to do so.

Nor can we ignore the fact that the relevant provisions of sections 1222(b)(3) and (5) are identical to those found in section 1322. We are therefore reluctant to dismiss the unanimous opinion of the circuit courts that no federal interest served by Chapter 13 justifies allowing a debtor to cure default after a foreclosure sale. *See, e.g., Roach,* 824 F.2d at 1377. In this regard, the distinction between sections 1222(b)(2) and 1322(b)(2) is not material. We have explained why the authority to modify the rights of home mortgagees under section 1222(b)(2) should not extend to the rights of a lender who has foreclosed upon and repurchased the property, *see supra* p. 1083, and those principles apply here, as well.[8]

Most importantly, we do not believe that allowing state law to control the rights of debtors to redeem their land under Chapter 12 would significantly impede the family farmer's access to or use of this reorganization procedure. In South Dakota, a mortgagee commences a foreclosure action by filing a complaint and serving it upon the debtor, as in other civil actions. SDCL § 21–47–1. The complaint must contain "a short and plain statement of the claim," SDCL § 15–6–8(a)(1), and "a demand for judgment for the relief to which [the mortgagee] deems himself entitled," SDCL § 15–6–8(a)(2). The debtor therefore receives clear notice of the nature of the action and the result sought by the creditor, which even a debtor unsophisticated in legal matters is likely to take seriously. The debtor is afforded at least thirty days to file an answer, SDCL § 15–6–12(a), during which time counsel may be consulted about available courses of action. Even after the time for answer has passed, there will be ample opportunity to negotiate with creditors for a settlement and to file a Chapter 12 petition before the state proceeding progresses to final judgment. These safeguards are sufficient to satisfy the remedial goals of Chapter 12.[9]

◾ We conclude that the authority conferred on debtors and bankruptcy courts by sections 1222(b)(3) and (5) to cure or waive "any default" does not preempt state statutory redemption periods. In the absence of any conflict between these provisions or any federal interest which requires a contrary result, we must conclude that South Dakota law controls the rights of the parties regarding redemption, *see Butner,* 440 U.S. at 55, 99 S.Ct. at 918, and that the cure provisions of section 1222(b) are not applicable after a foreclosure sale has been held.

---

8. The circuit courts appear to agree that the right to cure under section 1322(b)(5) is distinct from and is not limited by section 1322(b)(2), *see Roach,* 824 F.2d at 1374–77; *Glenn,* 760 F.2d at 1434–35 n. 2, and two of the three circuit courts denying a right to cure after foreclosure sale under section 1322(b)(5) did not base their reasoning on the restriction found in section 1322(b)(2), *see Roach,* 824 F.2d at 1377–79; *Tyn-*

*an,* 773 F.2d at 178. *But cf. Glenn,* 760 F.2d at 1433–36.

9. In this case, approximately ten weeks passed between the commencement of the case and its conclusion. The Justices could have filed for reorganization at any point during that time.

## III.

The Justices' final argument is that the "right to cure" under Chapter 12 is a federal right, the parameters of which should be determined entirely by federal law. *Cf. Glenn*, 760 F.2d at 1436 (reaching similar conclusion under Chapter 13); *Grubbs*, 730 F.2d at 241 (same), *Taddeo*, 685 F.2d at 28–29 (same). With this argument, they again challenge our conclusion that by using the terms "cure" and "default" in sections 1222(b)(3) and (5), Congress intended to refer to the contractual mortgage relationship, as defined by state law, and to allow state law to control when that relationship is dissolved. *See supra* p. 1085. The Justices acknowledge that Chapter 12 nowhere defines the scope of this right, or its operative terms. In essence, their position is that section 1222(b) authorizes the federal courts to create a federal common law governing the cure of mortgage defaults in the family farm context.

 To determine whether a provision of the bankruptcy code empowers the federal courts to create federal common law, we apply much the same analysis used to decide whether preemption is necessary. *See United States v. Landmark Park & Associates*, 795 F.2d 683, 684 (8th Cir.1986). The question is essentially one of congressional intent, and a debtor must show that some identifiable federal interest promoted by the statute requires a result different from that obtained by application of state law. *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966). *See also Butner*, 440 U.S. at 54–55, 99 S.Ct. at 917–18. The Justices argue that the remedial purposes of Chapter 12 cannot be met if the rights of family farmers to redeem their land are governed by state law. They believe this court should create a nationally uniform rule, under which a debtor retains the right to cure default at least until the relevant state redemption period has expired, regardless of any state law provisions limiting that right.

 We need not decide today whether the right to cure under sections 1222(b)(3) and (5) is a federal right, because we are satisfied that even if it is, state law should be adopted in these circumstances as the federal rule of decision. *Cf. United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727–28, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1970) (controversies governed by federal law "do not inevitably require resort to uniform federal rules"); *United States v. Yazell*, 382 U.S. 341, 357, 86 S.Ct. 500, 509, 15 L.Ed.2d 404 (1966) (applying state law without deciding whether state law governed of its own force or should be adopted as federal rule).

To resolve this issue, we apply a balancing test. We first determine whether there is any significant need for uniformity on the interstate level and assess the extent to which application of state law would "frustrate specific objectives" of the federal statute. *Kimbell*, 440 U.S. at 728, 99 S.Ct. at 1458. Against these considerations we weigh the values of intrastate uniformity, *Butner*, 440 U.S. at 55, 99 S.Ct. at 918, of adopting a pre-existing and well-articulated body of law in which the states traditionally enjoy greater expertise, *Yazell*, 382 U.S. at 352–53, 86 S.Ct. at 507, and of avoiding disruption of commercial relationships predicated on state law, *Kimbell*, 440 U.S. at 728–29, 99 S.Ct. at 1458–59.

In this case the Justices have not offered any concrete reasons why Chapter 12 requires us to fashion a uniform federal rule regarding the right to cure under section 1222(b). It is well-settled that "bankruptcy acts of Congress may recognize the laws of the State * * * although such recognition may lead to different results in different States." *Butner*, 440 U.S. at 54 n. 9, 99 S.Ct. at 918 n. 9 (quoting *Stellwagen v. Clum*, 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1917)). *See also Yazell*, 382 U.S. at 356–57, 86 S.Ct. at 509. Federal bankruptcy practice generally incorporates state substantive law regarding property interests, *Butner*, 440 U.S. at 54–55, 99 S.Ct. at 917–18, and we must reject "generalized pleas for uniformity as substitutes for concrete evidence" that use of state law would undermine the effectiveness of a federal statute, *Kimbell*, 440 U.S. at 730,

99 S.Ct. at 1459, particularly in the bankruptcy context, *Roach,* 824 F.2d at 1379.

Nor would application of South Dakota law to this case frustrate any of the objectives of Chapter 12. We have fully discussed our reasons for reaching this conclusion in analyzing the Justices' preemption claims. We recognize, of course, that if a state "imposes unreasonable conditions" on the right to cure, *Wallis,* 384 U.S. at 70, 86 S.Ct. at 1305, or adopts cure provisions which discriminate against family farmers in an effort to evade Chapter 12, *see Kimbell,* 440 U.S. at 736 n. 37, 740, 99 S.Ct. at 1464–65, we would be faced with a different argument. The issue here, however, involves "commercial rules of general applicability," *id.* at 736 n. 37, 99 S.Ct. at 1462 n. 37, which were debated and ratified well before Chapter 12 was conceived.

Finally, substantial state interests support the application of local law in this context. In addition to the general values promoted by uniform intrastate treatment of property interests, *see Butner,* 440 U.S. at 55, 99 S.Ct. at 918, each state has its own well-developed system of real property law, which "reflect[s] important and carefully evolved state arrangements designed to serve multiple purposes." *Yazell,* 382 U.S. at 353, 86 S.Ct. at 507. These systems have no federal counterpart, and we are therefore reluctant to "invent one and impose it upon the states." *Id. See also Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 701–04, 86 S.Ct. 1107, 1110–13, 16 L.Ed.2d 192 (1966). Lenders and borrowers depend on local property law "to provide the stability essential for reliable evaluation of the risks involved" in mortgage transactions. *Kimbell,* 440 U.S. at 739, 99 S.Ct. at 1464. Absent a clear congressional directive, we should not create new rules and generate additional uncertainties whose ultimate consequences may be difficult to foresee. *Id.*[10]

We conclude that sections 1222(b)(3) and (5) do not authorize the federal courts to create a federal common law right to cure which includes authority to extend state redemption periods.

## IV.

In summary, we hold that South Dakota law controls the rights of the Justices and Prudential regarding redemption of the Justices' farm. 11 U.S.C. §§ 1222(b)(2), (3) and (5) do not preempt state law in this area, nor do subsections (3) and (5) empower the federal courts to create federal common law which extends state redemption periods. As a result, bankruptcy courts may not confirm Chapter 12 reorganization plans which rely upon these provisions to extend or displace state redemption periods.

We vacate the temporary stay granted on August 11, 1987, and remand the cause to the bankruptcy court for further proceedings. The judgment of the district court is affirmed.

HEANEY, Circuit Judge, dissenting.

Although I agree with much of the majority opinion, I respectfully dissent from that portion of it which holds that the right to cure does not extend beyond the foreclosure sale.

First, I agree with the majority that *Johnson v. First National Bank of Montevideo,* 719 F.2d 270 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984), does not control this case. It would be a mistake to hold that *Johnson* renders state created redemption periods inviolate in the bankruptcy courts. *Cf. In re Maanum,* 838 F.2d 991, 992 (8th Cir.1988) (Heaney J. dissenting from denial of rehearing en banc) ("If a party is entitled to relief under a specific provision of the Bankruptcy Code, it should not be prejudiced by the fact that a state deadline has

---

**10.** We are aware that at least one circuit court has taken Congress' silence regarding the right to cure as an invitation to balance the equities and create its own cut-off date for that right. *Glenn,* 760 F.2d at 1435. In light of our analysis of the state and federal interests implicated in this area, we believe that Congress' silence is better interpreted as evidence of its intent to leave state law undisturbed. *Cf. Hoosier Cardinal,* 383 U.S. at 703–04, 86 S.Ct. at 1112 (state statutes of limitations undisturbed by section 301 of Taft Hartley Act).

passed."). As *Johnson* recognizes, although the law of the state in which the bankrupt's property is situated ordinarily governs the rights of the parties in the property, "[w]here Congress has chosen to exercise its authority, contrary provisions of state law must accordingly give way." *Id.* at 273. Therefore, if Chapter 12 offers the Justices specific relief, the running of a state redemption period should not frustrate that relief.

Second, I agree with the majority that, pursuant to 11 U.S.C. § 1222(b)(3) and (5), a Chapter 12 plan of reorganization may remedy a default notwithstanding the fact that, pursuant to a contract, the creditor may have accelerated the entire debt due. *See, e.g., In re Roach,* 824 F.2d 1370, 1374–77 (3rd Cir.1987); *In re Terry,* 780 F.2d 894 (11th Cir.1985); *In re Glenn,* 760 F.2d 1428, 1442 (6th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *In re Clark,* 738 F.2d 869, 872–74 (7th Cir.1984); *Grubbs v. Houston First American Savings Association,* 730 F.2d 236, 237 (5th Cir.1984) (en banc); *In re Taddeo,* 685 F.2d 24 (2d Cir.1982). *But see In re Harlan,* 783 F.2d 839 (9th Cir.1986); *In re Seidel,* 752 F.2d 1382 (9th Cir.1985).

Third, I agree with the majority that 11 U.S.C. § 1222(b)(2) does not authorize an extension of a state redemption period. Courts have drawn a distinction between the right to "modify" and the right to "cure." *See, e.g., In re Roach* at 1374–77; *In re Taddeo* at 27. The former, found in section 1222(b)(2), authorizes a plan which proposes to distribute to creditors less than the total amount of their claims. *Cf.* 11 U.S.C. § 506 (defining allowed secured claim); 11 U.S.C. § 1225(a) (authorizing confirmation of a Chapter 12 plan which provides, inter alia, that the value of property distributed on account of a secured claim is not less than the amount of an allowed secured claim). The latter, found in section 1222(b)(3) and (5), authorizes a plan proposing to remedy events of default which have already occurred and to continue payments. *See, e.g., In re Taddeo* at 26–27.

Accordingly, courts have interpreted section 1322(b) as authorizing plans which propose to cure a default on a home mortgage obligation despite the fact that section 1322(b)(2), unlike section 1222(b)(2), prohibits modification of the rights of a holder of a claim secured only by a security interest in real property which serves as the principal residence of the debtor. *See, e.g., In re Roach* at 1376; *In re Glenn* at 1434. They have done so on the ground that the right to cure does not sufficiently interfere with the rights of the home mortgagee to work a modification. *See id.* Similarly, sections 1222(b)(2) and 1222(b)(5) are not cumulative or overlapping. Rather, they are distinct provisions designed to serve very different purposes. Given these distinct functions, modification of a claim should not in any way interfere with the running of a state redemption period.

Notwithstanding my agreement with the majority in the above respects, I cannot concur in the majority's holding that "the cure provisions of section 1222(b) are inapplicable after a foreclosure sale has been held." Majority Opinion at 14–15. Instead, I would hold that the clear and strong rehabilitative purposes of Chapter 12 require application of the cure provisions of section 1222(b) to the fullest extent. That is, a debtor should be allowed to propose a Chapter 12 plan of reorganization which remedies any default within a reasonable time and maintains payment during the term of the plan and thereafter.

The majority argues that once a foreclosure judgment and sale occur, the mortgage is extinguished. Thus, in attempting to exercise its rights under section 1222(b)(5), the debtor actually seeks to modify the state court judgment and sale. Yet, to the extent the judgment conflicts with specific rights granted the debtor under the Bankruptcy Code, contrary provisions of the state court judgment must give way. Much of the Bankruptcy Code involves modification of state created property rights. Such modifications are not prohibited merely because the rights involved are embodied in a state court judgment. Moreover, it is unlikely that the limited authority to cure granted in section

1222(b)(5) would create significantly greater confusion or uncertainty in the real property law of South Dakota than exists as a result of the redemption period already afforded mortgagors in that state.

In addition, the majority argues that the terms "cure" and "default" are commonly understood to presuppose a contractual relationship. From this, it is inferred that Congress intended to provide relief for defaulting mortgagors only as long as the contractual relationship continues. Yet, the language of section 1222(b)(5) does not limit the right to cure to those debts arising out of an existing contractual relationship. The majority's point that Congress was aware of the differences between contractual obligations and rights arising by operation of statute is hardly helpful to its case. One would think that if Congress had been aware of such an important distinction, it would have clearly expressed its intention to limit the debtor's right to cure a default to a time before acceleration, judgment, or sale. It did not. I see no reason for the Court to impose a limitation on the right to cure that is not supposed by the broad language of section 1222(b)(5).

In addition, the specific rehabilitative goals of Chapter 12 also require a broader right to cure than that adopted by the majority. Contrary to the view of the majority opinion, Chapter 12 was intended to and does offer family farmers more than procedural changes aimed at simplifying federal reorganization procedure. Majority Opinion at 12. In passing Chapter 12, Congress enacted substantive changes in the laws affecting family farm reorganizations. *See, e.g.,* 11 U.S.C. § 1225 (modifying the absolute priority rule). While the substantive changes may be the result of a balance struck between offering family farmers important protections and ensuring that farm lenders receive a fair repayment, the changes embodied in Chapter 12 clearly reveal an overarching purpose to "give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land." H.R.Rep. 554, 99th Cong., 2d Sess., 48, *reprinted in* 1986 U.S. Code Cong. & Admin.News 5249.

Moreover, Chapter 12 is specifically intended to benefit family farmers. Therefore, it is appropriate to take into account the peculiar nature of a family farm enterprise in interpreting it. Ordinarily, the largest and most important productive asset and source of collateral of a family farm operation will be the land that is farmed. Thus, for a plan of reorganization under Chapter 12 to succeed, retention of the land is a necessity. Without it, liquidation, and the loss it imposes on all creditors will, in all probability, be the only viable course. A broad view of the right to cure under section 1222(b)(5), therefore, is most in keeping with the purposes of Chapter 12 because it increases the likelihood that family farmers facing bankruptcy will be able to retain the single most important element in an effective reorganization.

In light of the specific purposes of Chapter 12 and the broad language of section 1222(b)(5), I would hold that at any time prior to final divestment of the debtor's interest, the debtor may appropriately propose a plan of reorganization that will, within a reasonable time, cure any default.