BRIGHT, Senior Circuit Judge.
 

 Otoe County National Bank (Bank) appeals a district court
 
 [1]
 
 judgment affirming three decisions of the bankruptcy court
 
 [2]
 
 regarding Rick and Merrilee Easton’s Chapter 12 bankruptcy plan. The Bank contends the district court erred in affirming the bankruptcy court’s decision: (1) to set aside a sheriff’s sale; (2) to deny the Bank’s motion to dismiss the Chapter 12 petition; and (3) to confirm the Eastons’ Chapter 12 reorganization plan. We reject the Bank’s arguments regarding these decisions and accordingly, affirm.
 

 I. BACKGROUND
 

 Rick and Merrilee Easton filed the Chapter 12 bankruptcy petition at issue in this case on February 13, 1987. In 1985, the Eastons had filed a Chapter 13 petition which the district court dismissed on January 15, 1987. During the pendency of the first petition, the Bank had obtained relief from the automatic stay to pursue a foreclosure action against the Eastons’ two-acre hog confinement facility (hog farm). The Bank brought foreclosure proceedings in state court, but before completion, the Eastons filed this present bankruptcy action.
 

 On May 2, 1987, the bankruptcy court granted the Bank relief from the second automatic stay and the Bank continued the foreclosure action in state court. On August 11, 1987, the state court entered a judgment foreclosing the Bank’s mortgage on the hog farm. The Eastons did not appeal this judgment. The Eastons then received notice that a sheriff’s sale would be held at 10:00 a.m. on October 13, 1987. They did not seek an order to enjoin the Bank from scheduling or holding this sheriff’s sale.
 

 During the period between the date of the foreclosure judgment and the date of the sheriff’s sale, the Eastons prepared a detailed Chapter 12 reorganization plan. At a September 16,1987 hearing before the bankruptcy court, the parties disagreed over the plan’s terms.
 
 [3]
 
 After the parties had agreed to particular amendments to the plan, the bankruptcy judge stated that the plan was feasible and that he would confirm the plan upon the filing of these amendments.
 
 [4]
 
 Two days later, the bankruptcy court filed a written order conforming to the court’s prior oral statement.
 
 [5]
 
 At
 
 *314
 
 this time, the Eastons did not move for reimposition of the stay or seek an order enjoining the sheriffs sale.
 

 On Saturday, October 10, 1987, only three days before the scheduled sheriffs sale, the Eastons mailed their second amended plan to the bankruptcy court. Some creditors received copies of the plan on the following Monday, October 12. Nonetheless, the second amended plan was not formally filed with the bankruptcy court until sometime Tuesday, October 13 because the court was not open for business on Monday, October 12, Columbus Day. The docket sheet does not indicate the time the second amended plan was filed on October 13, but the bankruptcy court subsequently found as a factual matter that the second amended plan was not filed until after the sheriffs sale was conducted at 10:00 a.m. that morning.
 

 The Bank, upon receiving the second amended plan on Monday, October 12, informed the Eastons’ attorney that the amendments did not conform to its understanding of the bankruptcy court’s requirements. The Bank proceeded with the sheriff’s sale the next day and purchased the hog farm for $130,000.
 

 On Wednesday, October 14, the Eastons filed a third amended plan with the bankruptcy court. On the same day, the bankruptcy court held a telephone hearing with counsel for all parties and the Chapter 12 bankruptcy trustee and determined that the third amended plan conformed to its September 18, 1987, order.
 

 On October 20, the Bank moved to dismiss the Eastons' third amended plan, contending that the Eastons’ primary asset, the hog farm, had been sold and therefore the Eastons could not fund the Chapter 12 plan. On October 25, the Eastons moved to set aside the sheriff’s sale, contending that the Bank acted in bad faith by proceeding with the sale after their Chapter 12 plan was orally confirmed at the September 16 hearing. Therefore, the hog farm was not subject to sale.
 

 On November 17, 1987, the bankruptcy court confirmed the Eastons’ Chapter 12 reorganization plan. On February 5, 1988, the bankruptcy court set aside the sheriff’s sale and denied the Bank’s motion to dismiss. The bankruptcy court concluded that the Bank had acted in bad faith by proceeding with the sheriff’s sale “because it was implicit at the confirmation hearing * * * that the plan would be confirmed upon the filing of the amendments which were read into the record at that hearing.” It rejected the Bank’s assertion that the lifting of the automatic stay created a “race to the courthouse” situation in which the foreclosure sale could be held until the entry of the written confirmation order.
 

 The Bank then appealed these decisions to the district court. The district court found that 11 U.S.C. § 105(a) (Supp. Y 1987) conferred authority upon the bankruptcy court to set aside the sheriff’s sale and that the bankruptcy court’s conclusion that the Bank had acted in bad faith was not clearly erroneous. Additionally, the district court affirmed the confirmation of the Chapter 12 plan.
 

 This appeal followed.
 

 II. DISCUSSION
 

 The Bank argues that the district court erred in affirming the order setting aside the foreclosure sale because the circumstances of this case did not warrant the bankruptcy court’s exercise of its equitable powers to set aside a foreclosure sale. It argues that the facts of this case do not demonstrate bad faith on the Bank’s part; rather, only a diligent and vigilant pursuit of its rights under state law.
 

 To support this argument, the Bank notes that at the time of the sheriff’s sale, it had obtained both relief from the automatic stay and a valid foreclosure judgment against the hog farm in state court. All parties had received notice of this foreclosure judgment and the date of the sheriff’s sale, and yet the Eastons failed to take legal action to prevent the sale,
 
 i.e.,
 
 by timely filing their amended plan with the bankruptcy court or moving to enjoin the
 
 *315
 
 sale or reimpose the stay. Further, no written confirmation order had been entered at the time of the sale. These facts, particularly the absence of a written confirmation order, lawfully permitted the Bank to proceed with the sheriffs sale.
 

 Both the bankruptcy and district courts rejected this argument, concluding that an implied condition existed that the Bank would not proceed with the sheriffs sale in light of the oral confirmation given at the September hearing. By proceeding with the sale, the Bank’s actions constituted bad faith and warranted equitable relief. We agree.
 

 Bankruptcy courts are courts of law as well as courts of equity.
 
 See Butner v. United. States,
 
 440 U.S. 48, 55-56, 99 S.Ct. 914, 918-19, 59 L.Ed.2d 136 (1979);
 
 Johnson v. First Nat’l Bank of Montevideo, Minn.,
 
 719 F.2d 270, 273 (8th Cir.1983),
 
 cert. denied,
 
 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Section 105(a) of the Bankruptcy Code provides bankruptcy courts with broad general powers to grant such relief as is necessary to effectuate the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a).
 
 [6]
 
 These equitable powers, though broad, have limitations: such powers must be exercised consistent with the provisions of the Bankruptcy Code.
 
 Johnson,
 
 719 F.2d at 273;
 
 Collier on Bankruptcy
 
 § 105.02, at 105-10 (15th ed. 1989).
 

 Generally, a bankruptcy court will not exercise its equitable powers to upset a perfectly valid state foreclosure proceeding; only where “unusual and compelling circumstances or a particularly egregious fact situation” exists will a bankruptcy court exercise this power.
 
 Fisher v. First Union Mortgage Corp. (In re Fisher),
 
 80 B.R. 58, 62 (Bankr.M.D.N.C.1987);
 
 see also Hood v. Williams (In re Hood),
 
 92 B.R. 648, 655 (Bankr.E.D.Va.1988) (requiring the presence of extreme and compelling circumstances);
 
 Krueger v. Great Pac. Money Mkts., Inc. (In re Krueger),
 
 69 B.R. 845, 849 (Bankr.C.D.Cal.1987) (authorizing a bankruptcy court “to vacate a foreclosure sale to right the misdeeds of the foreclosing creditor”),
 
 aff'd on other grounds,
 
 88 B.R. 238 (9th Cir. BAP 1988);
 
 cf. In re Ernst,
 
 45 B.R. 700, 703-04 (Bankr.D.Minn. 1985) (to justify modification of a plan or an extension of time to perform a plan’s obligations, a debtor must demonstrate substantial unforeseen and uncontrollable intervening circumstances).
 

 Here, the bankruptcy court exercised its equitable power to set aside the valid sheriffs sale based on the existence of unusual and compelling circumstances, namely the bad faith actions taken by the Bank. A factual finding of bad faith is subject to the clearly erroneous standard of review.
 
 See Hanson v. First Bank of S.D.,
 
 828 F.2d 1310, 1312 (8th Cir.1987). As a factual finding, it will be accepted on appeal unless the appellate court believes with a definite and firm conviction that the bankruptcy court has committed a mistake.
 
 Id.
 

 No such mistake exists here. The bankruptcy court relied on a number of eviden-tiary facts to reach its finding of bad faith, particularly observing that the Bank knew that the Eastons’ reorganization plan would be confirmed by the bankruptcy court upon the filing of the agreed upon amendments. The Bank had received a copy of this amended plan one day before the scheduled sale and yet proceeded with the sheriff’s sale despite this knowledge. This ultimate finding of bad faith has support in the record. Therefore, the bankruptcy court finding is not clearly erroneous. Accordingly, the bankruptcy court properly exercised its equitable powers under 11 U.S.C. § 105(a) to set aside the sheriffs sale.
 

 The Bank further argues that by setting aside the sheriff’s sale, the bankruptcy court created substantive rights which were not available to the Eastons under
 
 *316
 
 state law. It argues that under state law the Eastons only possessed the right to redeem the hog farm for one year after the sale. It claims that by setting aside the sheriffs sale, the bankruptcy court conferred an additional benefit upon the Ea-stons,
 
 i.e.,
 
 the right to full use of the hog farm between the date of the bankruptcy filing and the date of the confirmation without paying adequate protection to the Bank. It contends that this conferral of additional benefits conflicts with our holding in
 
 Johnson,
 
 719 F.2d at 274-75, which addressed the proper exercise of a bankruptcy court’s equitable powers.
 

 In
 
 Johnson,
 
 this court held that 11 U.S.C. § 105(a) did not empower the bankruptcy court with the authority to stay indefinitely the expiration of the Minnesota statutory redemption period which arises following a real estate foreclosure.
 
 Id.
 
 The court concluded that the bankruptcy court’s action created substantive rights which did not exist under state law and that the -bankruptcy court could not properly exercise its equitable powers to take this action absent specific congressional authority or exceptional circumstances.
 
 Id.
 
 The court further noted the lack of allegations of wrongdoing which would support the determination of exceptional circumstances.
 
 Id.
 
 at 275.
 

 Here, the finding of bad faith on the Bank’s part constituted exceptional circumstances warranting the exercise of the bankruptcy court’s equitable powers under 11 U.S.C. § 105(a). Thus,
 
 Johnson
 
 may be distinguished.
 

 The Bank also contends the district court erred in affirming the order denying its motion to dismiss because cause for dismissal existed. It argues that the Eastons’ reorganization plan relied almost exclusively upon the income it would derive from the hog farm. Once the hog farm was sold, the Eastons only possessed a right to redeem the farm for one year. Because the evidence indicated that the Eastons would not be able to redeem the farm within that year, the Eastons did not have a feasible reorganization plan or a reasonable likelihood of rehabilitation. Therefore, the bankruptcy court should have granted the motion to dismiss.
 

 The Bank similarly argues that the district court erred in affirming the bankruptcy court’s confirmation of the Eastons’ reorganization plan because the plan was not feasible without the revenue derived from the hog farm. Because the hog farm was properly sold before entry of the confirmation order, the plan became nonfeasible. Therefore, the bankruptcy court should not have confirmed the plan.
 

 Both of these arguments are premised on the assumption that the bankruptcy court erred in setting aside the sheriff’s sale. Because we hold that the bankruptcy court properly set aside the sheriff’s sale, we reject these two arguments.
 

 III. CONCLUSION
 

 Accordingly, the judgment of the district court is affirmed.
 

 [1]
 

 . The Honorable Donald E. O’Brien, Chief Judge, United States District Court for the Northern District of Iowa.
 

 [2]
 

 . The Honorable Michael J. Melloy, Bankruptcy Judge, United States Bankruptcy Court for the Northern District of Iowa.
 

 [3]
 

 . The principal objections concerned: (a) the proposed interest rate; (b) the proposed period of repayment; and (c) the feasibility of the plan.
 

 [4]
 

 . Specifically, Judge Melloy stated:
 

 [U]pon filing of the amendments that have been referred to here this evening, I will enter an Order of Confirmation of debtors’ Plan
 

 [[Image here]]
 

 * * * I’m going to find that the Plan is feasible, the changes as indicated by Mr. Har-melink are to be filed and of course served upon the Trustee and Ms. McCarthy. Assuming that the changes are consistent with the agreement, I’ll enter the Order of Confirmation.
 

 Confirmation Hrg. before Honorable Michael J. Melloy, United States Bankruptcy Court for the Northern District of Iowa, Sept. 16, 1987 (Tape No. 4A).
 

 [5]
 

 .The order filed September 18, 1987, reads: “Pursuant to the Findings of Fact and Conclusions of Law entered into the record at the conclusion of the hearing in the above case, Debtors’ Chapter 12 Plan will be confirmed
 
 *314
 
 upon the filing of certain amendments as stated in the record at the hearing.”
 

 [6]
 

 .
 
 11 U.S.C. § 105(a) (Supp. V 1987) provides:
 

 The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.