**In re Ronald John FEIMER and Kathleen Marie Feimer, dba Feimer Construction.**

**Bankruptcy No. 91–40446–PKE.**

United States Bankruptcy Court, D. South Dakota, S.D.

Sept. 24, 1991.

Roger W. Damgaard, Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, S.D., for creditor/movant Cedar Sec. Bank.

Wanda Howey–Fox, Harmelink & Fox Law Offices, Yankton, S.D., for debtors.

PEDER K. ECKER, Bankruptcy Judge.

On September 17, 1991, the Court heard and took under advisement Cedar Security Bank's motion to obtain relief from the automatic stay in order to foreclose on its collateral, which is real property located in South Dakota, used by these Chapter 13 debtors as their residence and business. Cedar Security Bank (hereinafter "Bank"), a secured creditor located in Nebraska, is secured by a perfected security interest in a mortgage reduced to judgment in foreclosure. The secured party argues that the automatic stay should be modified due to a lack of adequate protection and for cause due to the debtors' inability to pay the Bank the total debt owed during the five-year plan. This creditor also argues there is no equity in the collateral and that the collateral is not necessary for an effective reorganization.

In response, the debtors assert that the collateral is necessary for an effective reorganization and that the debtors, under 11 U.S.C. § 1322(a)(2), may modify the Bank's claim against the homestead.

An underlying, basic issue in this proceeding is determining how much time a Chapter 13 debtor is given, according to South Dakota state law, to cure a mortgage default and to modify the rights of the secured creditors. In other words, when does the mortgage relationship end, and has it already ended in this case, which would mean that these Chapter 13 debtors may not use the provisions of the Bankruptcy Code to modify the rights of this creditor. The Court, after reviewing the motion and reply and applicable South Dakota statutes and case law, holds that the mortgage in this case was extinguished at the time of the foreclosure judgment, and at that point, the debtors' right to cure the default ended. In addition, the motion for modification of the automatic stay is granted for cause pursuant to 11 U.S.C.

§ 362(d)(1) and (2). The Court has jurisdiction over the parties and subject matter under 28 U.S.C. § 1334. This Letter Decision constitutes Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

In 1985, the Sixth Circuit Court of Appeals heard three consolidated cases dealing with 11 U.S.C. § 1322(b) in the case of *In re Glenn*, 760 F.2d 1428 (6th Cir.1985). The court had an appropriate discussion regarding the disagreement among the courts over when and under what circumstances Section 1322(b) allows a cure once a default on a mortgage has triggered acceleration of the debt. Is it at the point of judgment, or after the foreclosure sale? For various reasons, the Sixth Circuit in *Glenn* chose the sale of the mortgaged premises to be the cut-off date for the statutory right to cure defaults. Not all courts or all of the circuits have chosen this viewpoint.

In 1988, the South Dakota case of *Justice v. Valley Nat'l Bank*, 849 F.2d 1078 (8th Cir.1988), provided this Court and the Eighth Circuit with the opportunity to deal with the question of when a debtor's power to cure a mortgage default and to modify a secured creditor's rights should be cut off. Factually, this case dealt with a Chapter 12 plan that proposed that the debtor pay the redemption price over a period of time that extended beyond the time period set by state law. In its decision, the court stated that Section 1222(b)(2) was identical to Section 1322(b)(2) and further held that state law dictates when the mortgage relationship has ended:

"Congress evidenced its intent to provide additional relief for defaulting mortgagors only as long as the contractual relationship continues, and to allow state law to control when that relationship is dissolved. Extinguishment of the mortgage contract works a substantial change in the relationship of the parties...."

*Id.* at 1085. In *Justice*, there had been a foreclosure judgment and also a foreclosure sale. The court stated that, based upon South Dakota law, "the debtor's right to cure a mortgage default under sections 1222(b)(3) and (5) would therefore expire when the mortgagee (or a third party) purchases the property at a foreclosure sale." *Id.* at 1084.

There had been a foreclosure sale in *Justice*, and the facts of the matter now before this Court indicate that only a foreclosure judgment has been obtained. Nonetheless, the Eighth Circuit's discussion regarding the application of state law resolves the situation of the *Feimer* case. South Dakota law states that "a foreclosure by action of a mortgage upon real estate operates as a complete extinguishment, satisfaction and payment of the debt secured by the mortgage." S.D.C.L. § 21–47–17 (1987). The Eighth Circuit held that in South Dakota, "a real estate mortgage is extinguished after both the 'foreclosure of the mortgage and the sale of the mortgaged property.'" (Emphasis in the original.) *Justice*, 849 F.2d at 1084 (citing *American Fed. Sav. & Loan Ass'n v. Kass*, 320 N.W.2d 800, 804 (S.D.1982)). Based upon this statute and the *Justice* decision, the foreclosure judgment is enough to extinguish the mortgage relationship in this state.

Some might argue that the language in *Justice* indicates that the mortgage is not extinguished until after both the foreclosure and the sale have occurred. In other words, there would be no end to the relationship until after both events have occurred. This is an incorrect interpretation. Subsequent Eighth Circuit decisions have clarified the conjunction "and" to verify the interpretation that a mortgage is extinguished after the foreclosure judgment is rendered and it is also extinguished after the foreclosure sale. In South Dakota, both actions render the mortgage relationship to be concluded.

One of the subsequent cases was *Matter of Eynetich*, 98 B.R. 966 (Bankr.D.Neb. 1988), aff'd, *U.S. v. Eynetich*, 845 F.2d 1028 (8th Cir.1988). *Eynetich* discussed the *Justice* opinion and made a contrast between the state laws of South Dakota and Nebraska. The combined result was to resolve any ambiguity that may have been left after *Justice* with respect to when a mortgage relationship in South Dakota expired. In *Eynetich*, the court stated that

"Nebraska law is significantly different that [sic] the law of South Dakota." *Eynetich*, 98 B.R. at 969. The court stated that "a foreclosure sale judgment alone does not remove or extinguish the original mortgage lien.... In a state like Nebraska, the mortgage is not extinguished by the foreclosure decree alone...." *Id.* In other words, in South Dakota, this act alone *would* terminate a mortgage relationship. The court went on to explain that in South Dakota, state law extinguishes the relationship between mortgagor and mortgagee at both the point of foreclosure and at the point of foreclosure sale. *Id.* The discussion explaining *Justice* and the contrast that is made between Nebraska and South Dakota law resolve any ambiguity that the *Justice* case may have left with regard to when a South Dakota mortgage is extinguished.

The remaining question is why South Dakota law would provide for termination at each one of these mortgage foreclosure events. The answer lies in the fact that South Dakota statutes provide for more than one way to obtain a mortgage foreclosure. The law provides for foreclosure by action as well as foreclosure by advertisement. The mortgage relationship is terminated at different times, depending on which method of foreclosure is used.

In Chapter 21–47, foreclosure by action is available. This type of foreclosure is an action in the circuit court. The circuit court has the power to render a judgment against the mortgagor for the amount of debt owed. S.D.C.L. § 21–47–1. Under this method, the mortgage relationship expires once the judgment is obtained. Once the statutory period of redemption has expired, the circuit court then has the authority to order the property to be offered for sale. S.D.C.L. § 21–47–13. In Chapter 21–48, the law provides for foreclosure by advertisement, a method that has no recourse to the courts, is sometimes referred to as a "statutory foreclosure," and occurs by executing a power of sale contained in the mortgage. Black's Law Dictionary 581–82 (5th ed. 1979). A foreclosure by advertisement must conform to the statutory requirements which regulate such foreclosure sales. S.D.C.L. § 21–48–2 re-

quires that the mortgage containing the power of sale clause be recorded. Once a default occurs and proper notice is provided, a public auction is held and the property sold to the highest bidder. Under this provision, the mortgage relationship does not expire until the foreclosure sale has occurred. Mere advertisement does not terminate the mortgage. Because there are two different foreclosure methods, there are also two different times when the mortgage will end. This explains why the Eighth Circuit in *Justice* worded its interpretation with the conjunction "and."

Since it has been determined that under South Dakota law a mortgage relationship ends with a foreclosure judgment, and because a foreclosure judgment has been obtained by Cedar Security Bank, this Court determines that the debtors' power to cure the default and modify the rights of this secured creditor has expired. The Chapter 13 plan in this case may not attempt to alter the rights of Cedar Security Bank since the mortgage relationship no longer exists. At the time of this Chapter 13 petition, the debtors owed Cedar Security Bank $60,822.86. Based upon the reasons already provided and upon the remaining facts of this case, the automatic stay imposed under 11 U.S.C. § 362 should be modified for cause, including lack of adequate protection.