**Richard and Christine PICCOLO,**
**Appellees,**

v.

**DIME SAVINGS BANK OF**
**NEW YORK, Appellant.**

No. 92–CV–450.
**Bankruptcy No. 91–11383.**

United States District Court,
N.D. New York.

Oct. 5, 1992.

Richard and Christine Piccolo, pro se.

DeGraff, Foy, Holt–Harris & Mealy, Robert J. Rock, Albany, N.Y., for appellant.

Robert E. Littlefield, Albany, N.Y., Standing Trustee.

Kim Lefebre, Albany, N.Y., U.S. Trustee.

## MEMORANDUM DECISION AND ORDER

CHOLAKIS, District Judge.

Dime Savings Bank (Dime) appeals from an order of the Bankruptcy Court (Chief Judge Mahoney) reimposing the automatic stay under section 362(a), Title 11 of the United States Code, and setting aside a foreclosure sale. Dime argues that the foreclosure sale complied with the laws of New York State and with Judge Mahoney's earlier order lifting the automatic stay. The debtors, Richard and Christine Piccolo (Piccolo), have not submitted papers in opposition to Dime's appeal.

The standard of review in a bankruptcy appeal is set out in Bankruptcy Rule 8013 and in the cases. The Bankruptcy Court's legal conclusions receive de novo review. *In re Ionosphere Clubs*, 922 F.2d 984, 988–89 (2d Cir.1990), *cert. denied sub nom., Air Line Pilots Assn. v. Shugrue,* — U.S. ——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). Factual findings "shall not be set aside unless clearly erroneous." Bankruptcy Rule 8013.

The Bankruptcy Court lifted the automatic stay by order dated November 7, 1991. Rather than appeal that order under Bankruptcy Rule 8001, the Piccolos filed a notice of motion with the Bankruptcy Court on November 26, 1991 for an order vacating the order that lifted the stay. Judge Mahoney heard arguments on that motion on December 12, 1991, and according to Dime, decided that he "would set aside the November 7, 1991 order if the Debtors either demonstrated that they were current in all post-petition payments or become current in such payments by December 23, 1991." Brief on Appeal at 8. Judge Mahoney never signed an order to this effect. On December 17, 1991 the Bankruptcy Court held another hearing on the matter, at which time the Judge allegedly reiterated his decision of December 12, 1991. The docket sheet describes the result of the December 17, 1991 hearing as "25. Hearing held. Stipulated: debtor has until 12/23 to make payments." In addition, the record on appeal contains an unsigned order, apparently submitted by counsel for

the Piccolos, that would have reimposed the stay.

Relying on Judge Mahoney's order vacating the automatic stay, counsel's understanding of Judge Mahoney's decisions in mid-December, and the debtors' failure to tender payment, Dime foreclosed on the Piccolo's home in late December.[1]

At a hearing held nearly two months after the foreclosure sale, Counsel for the Piccolos[2] argued that, as of February 20, 1992, the November 26, 1991 motion was still pending.[3] After hearing the arguments and expressing doubts about his jurisdiction, Judge Mahoney nevertheless reimposed the automatic stay and set aside the foreclosure sale by order dated February 24, 1992.

On appeal, Dime frames the issues as follows:

(1) Whether the Bankruptcy Court had jurisdiction to set aside the foreclosure sale;

(2) Assuming jurisdiction, whether it was error to set aside the sale;

(3) Whether the Bankruptcy Court abused its discretion in reimposing the automatic stay and setting aside the foreclosure sale.

One thing is clear: the Bankruptcy Court did lift the stay on November 7, 1991. Whether that order remained effective until and beyond the foreclosure sale is an issue before this Court.

At least two items from the record on appeal suggest that the order vacating the stay was still effective on the date of the foreclosure sale. First, there is no written order countermanding the November 7, 1991 order. Second, Judge Mahoney's order of February 24, 1992, setting aside the foreclosure sale, stated that "the ex parte

Order dated November 7, 1991 is vacated on the condition that the Debtors pay to the Creditor" a specified sum. The fact that Judge Mahoney issued a conditional order vacating the November 7, 1991 order suggests that he regarded the November 7th order as effective from its inception until February 24, 1992, and perhaps beyond. Because the February 24, 1992 order was expressly conditioned upon the Piccolo's payment of money to Dime, it follows that the November 7, 1991 order remained in effect until the debtors satisfied the condition by paying the stipulated arrearage. If the judge had meant to clarify his unwritten decisions of mid-December— rather than announce a new decision affecting the validity of the November 7, 1991 order—he would have used words to that effect. In addition to vacating the November 7, 1991 order, Judge Mahoney set aside the foreclosure sale. In light of this reading of the order that Dime appeals from, it appears that Judge Mahoney regarded the order of November 7, 1991 as effective on the date of the foreclosure.[4]

In support of its argument that Judge Mahoney was without jurisdiction to set aside the foreclosure sale, Dime cites *In re Ghosh*, 38 B.R. 600 (Bankr.E.D.N.Y.), *appeal dismissed*, 47 B.R. 374 (E.D.N.Y. 1984). In that case, the Bankruptcy Court held as a matter of New York law that a "debtor loses all equitable and legal interest in real property validly sold at foreclosure whether or not the deed to that property has been delivered to the purchaser." *Ghosh*, 38 B.R. at 602. The court noted that New York does not have a redemption statute that would afford the debtor a statutory, rather than equitable, right of redemption.[5] Dime seems to argue that, because the collateral is no longer "property of the debtor" or "property of

---

1. Dime was itself the "purchaser" at the sale.

2. On appeal, the Piccolos are proceeding pro se.

3. Notwithstanding Dime's assertions to the contrary, the resolution of the Piccolo's November motion to set aside the order vacating the stay was less than clear. At the hearing on February 20, 1992, Judge Mahoney acknowledged the confusion. *See* Transcript of February 20, 1992 Hearing at 13–14 [hereinafter Transcript].

4. Judge Mahoney's conclusion as to the historical facts surrounding the confusion of mid-December is entitled to deference. A District Court may not set aside factual findings, unless the findings are clearly erroneous. Bankruptcy Rule 8013.

5. Foreclosure extinguishes the equity of redemption.

the estate" under 11 U.S.C. § 541, the Bankruptcy Court is without jurisdiction over the property.[6] This argument addresses, more precisely, the validity of Judge Mahoney's order reimposing the stay. It does not dispose of the contention that Judge Mahoney had jurisdiction—power—to set aside the foreclosure sale. Dime does not dispute that both parties submitted to the personal jurisdiction of the Bankruptcy Court.

### Reimposing the Automatic Stay

■ Given the foregoing conclusion that the order lifting the stay was still in effect on the date of the foreclosure sale, it follows that the collateral is no longer "property of the estate." By lifting the stay, Judge Mahoney consented to the state court's concurrent jurisdiction over the collateral.[7] *In re Ricks*, 26 B.R. 134, 137 (Bankr.D.Idaho 1983) (the state of affairs following the lifting of stay is essentially one of concurrent jurisdiction). Exercising that concurrent jurisdiction, the state court conducted a foreclosure sale that, as far as the record on appeal shows, complied with the laws of New York. Accordingly, the completion of the foreclosure sale divested the Piccolos of their interest in the collateral. *Ghosh*, 38 B.R. at 602–03; *Mikulec v. United States*, 705 F.2d 599, 601–02 (2d Cir.1983) (applying New York law). Indeed, that is the primary purpose of a foreclosure sale.

Following the sale, the collateral was property of Dime, the successful bidder at the sale, having lost its character as "property of the estate." *See In re Reserves Dev. Corp.*, 821 F.2d 520, 521 (8th Cir.

1987); *In re Ghosh*, 38 B.R. at 603. The Eighth Circuit noted that, as a matter of statutory construction, the stay provisions of section 362 operate only against "property of the estate." *In re Reserves Dev. Corp.*, 821 F.2d at 521 (citing 11 U.S.C. § 362(c)(1)). The subsequent foreclosure, by removing the collateral from the bankruptcy estate, rendered moot Judge Mahoney's reimposition of the stay. *In re Lashley*, 825 F.2d 362 (11th Cir.1987), *cert. denied sub nom.*, *Lashley v. First Nat. Bank*, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988). There simply was no property, at least with respect to the Piccolo's residence, upon which the stay could act on February 24, 1992.

■ It would be fruitless to contend that the order of February 24, 1992 retroactively imposed the stay, making it effective prior to the foreclosure. Section 362 grants prospective relief. "The automatic stay simply prohibits further acts. It does not invalidate acts already taken." *In re Concord Mill Ltd. Partnership*, 136 B.R. 896, 902 (Bankr.D.Mass.1992). Thus, Judge Mahoney's reimposition of the stay had no effect on the Piccolo's ownership of their home.[8] The more difficult issue is whether Judge Mahoney had jurisdiction to set aside the foreclosure sale.

### Jurisdiction to Set Aside the Foreclosure Sale

■ The foregoing discussion reveals that the automatic stay provisions of section 362 do not provide a basis for setting aside the foreclosure sale. The question remains, is there some other basis?

---

**6.** Under section 541, all property that the Debtor owns at the commencement of the Bankruptcy proceeding, both legal and equitable, becomes "property of the estate."

**7.** Prior to the actual sale of foreclosure, the collateral continued to be "property of the estate" since it is undisputed that the Piccolo's had an interest in it on the date of commencement. *See* 11 U.S.C. § 541. Were it otherwise, foreclosure *of their interest* would have been unnecessary.

**8.** In a similar case, the Eighth Circuit held that the Bankruptcy Court abused its discretion

when it reimposed the automatic stay, in light of the fact that the debtors dishonored various settlement agreements. *In re Wieseler*, 934 F.2d 965, 967 (8th Cir.1991). Here, the record shows that the Piccolos similarly failed to honor their agreements with Dime. *See* Brief on Appeal at 9. It has even been suggested that a Bankruptcy Court has no statutory power under section 362 to reinstate an automatic stay. Thus, a Bankruptcy Judge must observe the more stringent requirements of 11 U.S.C. § 105(a) in order to stay further proceedings. *In re Terramar Min. Corp.*, 70 B.R. 875, 877 (Bankr.M.D.Fla.1987).

The transcript of the February hearing suggests that Judge Mahoney was moved by equitable considerations.[9] For example, he inquired whether the debtors had any dependents. Upon learning that two children lived with the Piccolos, Judge Mahoney resolved to reimpose the stay and set aside the foreclosure.

It is at least arguable that Bankruptcy Courts possess sufficient equitable powers to set aside a foreclosure sale, under appropriate circumstances. *See In re Lashley,* 825 F.2d at 364 n. 1 (acknowledging but declining to decide the issue); *see also In re Krueger,* 69 B.R. 845 (Bankr.C.D.Cal. 1987). These equitable powers derive from 11 U.S.C. § 105(a), which provides,

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking an action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Though Congress drafted section 105(a) in broad terms, a Bankruptcy Court's discretion is not unbridled. The Second Circuit notes that "the power must and can be exercised only within the confines of the Bankruptcy Code." *In re Ionosphere Clubs,* 922 F.2d at 995 (citing *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169

(1988)).[10] The cases generally regard orders issued under the authority of section 105(a) as "injunctions" though the language of section 105(a) is more general than that.

Given the obviously equitable nature of Judge Mahoney's order, it might be fair to characterize it as an injunction: arguably it enjoined the parties to treat the foreclosure sale as if it never occurred. Given that Dime was the "purchaser" at the foreclosure sale, it appears that the February 24, 1992 order does not implicate the rights of any third parties. If this Court were to characterize Judge Mahoney's order as an "injunction", it is clear that, in issuing it, Judge Mahoney would have had to have complied with Fed.R.Civ.P. 65.[11]

The difficulty with characterizing the February order as an injunction lies in the fact that injunctions, generally, seek to preserve the status quo. Here, Judge Mahoney's order did not seek to preserve the status quo, but rather sought to restore the status quo ante. The order could not enjoin Dime from pursuing foreclosure, nor could it (as of February, 1992) enjoin the state court from conducting the sale. The sale was a fait accompli. It was beyond attack, certainly as a matter of state law. *Mikulec,* 705 F.2d at 601–02 (applying New York law).

Acknowledging that section 105(a) provides a reservoir of equitable power, it still remains to be decided how the Bankruptcy Court should be guided in the exercise of its equitable discretion.[12] Because the

---

**9.** Judge Mahoney agreed with Dime's assessment of the legal situation: "[Dime's] position is a straight legal position, and on the law I think he's right. Of course I have to look at it from a different viewpoint, which I do in many of these cases." Transcript at 19.

**10.** It is not clear from the record on appeal what provision of the Code Judge Mahoney sought to advance by issuing his February 24, 1992 order.

**11.** Bankruptcy Rule 7065 governs the power of injunction in the Bankruptcy Courts, and incorporates Fed.R.Civ.P. 65. In relevant part, Fed.R.Civ.P. 65 provides that every injunction shall "set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or

other document, the act or acts sought to be restrained ..." Fed.R.Civ.P. 65(d). Judge Mahoney's order, even if characterized as an injunction, does not meet these requirements for specificity: it does not describe the acts to be enjoined, and it incorporates the Piccolo's motion papers by reference.

**12.** This question assumes that Judge Mahoney's equitable ruling was in aid of a provision of the Code. *See In re Ionosphere Clubs,* 922 F.2d at 995 (citing *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988)). Perhaps he intended to advance section 362 (the automatic stay provision) by reimposing the stay. But the stay was not an end in itself that would justify an exercise of equitable discretion. Arguably, Judge Mahoney intended to preserve "property of the estate"

Bankruptcy Court is exercising equitable powers, traditional principles of equity guide the Court. In a case similar to this one, the Third Circuit held that section 105(a) relief is available if the debtor has met the burden of demonstrating traditional grounds for injunctive relief, namely: "substantial likelihood of success on the merits, irreparable harm to the movant, harm to the movant outweighs harm to the nonmovant, and injunctive relief would not violate public interest." *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 700–01 (3d Cir.1989) (considering reimposition of section 362 stay of foreclosure sale).[13] With respect to a Bankruptcy Judge's balancing of the equities, the District Court for the Southern District of New York noted that the exercise of section 105(a) authority is committed to the discretion of the Bankruptcy Court. *In re Greene*, 103 B.R. 83 (S.D.N.Y.1989), *aff'd without opinion*, 904 F.2d 34 (2d Cir.1990), *cert. denied sub nom.*, *Greene v. Balaber–Strauss*, — U.S. —, 111 S.Ct. 784, 112 L.Ed.2d 847 (1991).

The question of the power of a Bankruptcy Court under section 105(a) to set aside a state judgment of foreclosure is one that the courts seem eager to duck. While most cases address the use of section 105(a) power in the context of true injunctive relief, several do confront more directly the question of a court's power to set aside a valid foreclosure sale. The Bankruptcy Court in the Central District of California confidently stated that "section 105 of the Bankruptcy Code and the Bankruptcy Court's historic equity power provide ample authority" to set aside a foreclosure sale. *In re Krueger*, 69 B.R. 845, 849 (Bankr.C.D.Cal.1987), *aff'd on other grounds*, 88 B.R. 238 (Bankr.9th Cir.1988). The Bankruptcy Appeal Panel, in affirming the *Krueger* decision, was careful to point out that it rested its affirmance upon the finding that the foreclosure sale was conducted in violation of the automatic stay. It refused to decide

whether section 105(a) empowers a court to set aside a foreclosure sale. *In re Krueger*, 88 B.R. at 242 n. 3.

In comparison to the Bankruptcy Court in California's Central District, the Bankruptcy Court in the District of Massachusetts had a less extravagant view of its power to set aside a foreclosure sale. "Since the debtors have not challenged the good faith of the purchaser at foreclosure, nor were any irregularities about the foreclosure sale raised, it is beyond this court's power to now set aside what has been rightfully and legally completed." *In re Grundstrom*, 15 B.R. 832, 834 (Bankr. D.Mass.1981). Another Bankruptcy Court observed that, "[w]here a creditor has invoked remedies and settled its property rights in good faith reliance upon the termination of the automatic stay in bankruptcy, the Court should not and may not invoke its broad equitable powers ..." *In re Spaude*, 112 B.R. 304, 307 (Bankr.D.Minn. 1990). These views of the Bankruptcy Court's power are more consonant with general notions of comity between state and federal courts, a respect for the concurrent jurisdiction of the state court in this matter, and principles of finality. After all, both the state court and Dime relied on the order vacating the stay. The foreclosure sale was not conducted in violation of the Bankruptcy Court's stay; it took place under the authority of an order specifically lifting the stay. This Court adopts the more modest view of the Bankruptcy Court's power under section 105(a).

The Eighth Circuit addressed the power of a Bankruptcy Court to set aside a valid state foreclosure sale and provided an efficacious framework for reviewing such cases. *In re Easton*, 882 F.2d 312 (8th Cir.1989). That Court observed that as a general rule,

a Bankruptcy Court will not exercise its equitable powers to upset a perfectly val-

---

under section 541. But given the validity of the foreclosure sale, this is doubtful too.

**13.** The facts in *Wedgewood* involved the debtors' attempt to stay the foreclosure proceedings; here the debtors seek to undo them. The resulting orders in both cases are arguably "injunc-

tive" in nature: the *Wedgewood* order enjoins the foreclosure proceeding itself, whereas Judge Mahoney's order enjoins the parties from acting in reliance on the already-completed foreclosure proceeding. The difference between the cases is essentially one of timing.

id state foreclosure proceeding; only where "unusual and compelling circumstances or a particularly egregious fact situation" exists will a Bankruptcy Court exercise this power.

*Id.* at 315 (citing cases). In affirming the lower court's invalidation of a foreclosure sale, the Eighth Circuit deferred to the lower court's factual finding that the foreclosing mortgagee acted in bad faith by flouting the Bankruptcy Court's stated intention to confirm the debtors' Chapter 12 plan. This bad faith constituted adequate justification for the exercise of the lower court's equitable power. The absence of a mortgagee's good faith is an important consideration in deciding whether to set aside a foreclosure sale. In addition, the facts must strike the court as egregious or outlandish in some way.

In the present case, Judge Mahoney found that Dime acted within its rights in proceeding to foreclosure. The Judge observed that Dime's position was understandable, and that "on the law I think [Dime is] right." Transcript at 19. Nevertheless, the Bankruptcy Judge was moved by his consideration of the Piccolo's children and by the errors of the debtors' counsel. This Court must decide whether these equitable considerations constitute "unusual and compelling circumstances or a particularly egregious fact situation" that would justify setting aside a foreclosure sale. *See In re Easton,* 882 F.2d at 315.

Even acknowledging the Bankruptcy Court's latitude in balancing the equities, it appears to this Court that the Bankruptcy Court abused its discretion. The fact that a mortgagor on the verge of foreclosure has children is neither extraordinary nor egregious. If a mortgagor's children were a basis for setting aside a valid judgment and sale of foreclosure, very few foreclosure sales would survive attack. The resulting reluctance of prudent, prospective purchasers to bid at foreclosure sales would further depress these fire sale prices. This result would adversely affect the mortgagor by either increasing the amount of the deficiency judgment (if available) or reducing the surplus.

As for the errors of counsel, though these present a more "compelling" ground for granting relief, errors of counsel are not "unusual." [14] Bankruptcy practice is a specialized practice. This area of law, given recent economic and jurisprudential developments, is in a state of flux. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (declaring former jurisdictional section of Bankruptcy Code unconstitutional). Mistakes are bound to occur.

■ The decision in *Easton* adopts a strict standard, and with good reason. Federal courts must respect jurisdictionally valid judgments of the state courts. Congress has said as much for a long time. *See, e.g.* 28 U.S.C. § 1738 (Full Faith and Credit Act). Courts should not lightly compromise the finality and integrity of judicial pronouncements because the Nation's commerce—and its people—relies on the stability of judgments.

To summarize, several factors lead this Court to reverse the Bankruptcy Court's order setting aside the foreclosure sale. First, it appears that Dime and the state court relied in good faith on the November 7, 1991 order; second, there is a strong interest in promoting comity between state and federal courts and in protecting the finality of jurisdictionally valid judgments, as a general matter; third, the debtors' payment history is atrocious; and finally, the equitable considerations are less than "compelling or unusual."

Therefore, irrespective of whether the Bankruptcy Court had jurisdiction to set aside the foreclosure sale, under 11 U.S.C. § 105(a), the Bankruptcy Court erred in reimposing the stay because the collateral was no longer "property of the estate." In addition, the Court improperly set aside the foreclosure sale because the circumstances of the case were neither "compelling" nor "unusual." Accordingly, the Bankruptcy

---

14. At some point, the litigants must take responsibility for their attorneys.

Court's order of February 24, 1992 is reversed.

IT IS SO ORDERED.