In re Michael John BERG, a/k/a Mike Berg, Debtor.

Bankruptcy No. 92–40511.

United States Bankruptcy Court, D. South Dakota, S.D.

March 24, 1993.

Wanda Howey–Fox, Harmelink & Fox Law Office, Yankton, SD, for debtor Michael John Berg.

Douglas R. Kettering, Kabeiseman, Hosmer & Kettering, Yankton, SD, for Farm Credit Services.

Robert E. Hayes, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, for Farmers & Merchants State Bank, Scotland, S.D.

Rick A. Yarnall, Chapter 12 Trustee, Sioux Falls, SD.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

The matter before the Court is a motion for relief from the automatic stay filed by Farm Credit Services [hereinafter "FCS"]

through Yankton, South Dakota, Attorney Douglas R. Kettering and resistance filed by Debtor's counsel, Yankton, South Dakota, Attorney Wanda Howey–Fox. The issue is whether relief from the automatic stay may be granted to complete a scheduled sale of foreclosure when Debtor filed a petition for relief following the entry of a state foreclosure judgment but prior to the actual sale of the property. In resolving this issue, the Court must determine whether the circumstances presented in this case constitute an "unusual, compelling, or egregious" situation sufficient for the Court to exercise its equitable powers to set aside the pre-petition state foreclosure judgment in an effort to effectively preserve the Chapter 12 relief intended by Congress, namely, utilization of real property in a reorganization effort, by allowing Debtor to cure the mortgage default under 11 U.S.C. § 1222(b)(5). This is a core proceeding under 28 U.S.C. § 157(b)(2), and this ruling shall constitute Findings of Fact and Conclusions of Law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 4, 1988, Debtor executed and delivered a $31,600 promissory note and real estate mortgage in favor of FCS. Debtor defaulted under the terms of the note by failing to remit the 1992 annual payment.[1] FCS notified Debtor of the default on March 13, 1992,[2] and on March 31, 1992, the loan was accelerated. Because Debtor did not respond to the default condition, FCS commenced state court foreclosure proceedings by filing a Summons and Complaint on April 8, 1992.[3] Again, Debtor did not seize the opportunity to respond or answer. On June 18, 1992, FCS filed an Affidavit of Default along with a Notice of Intent to Take Default. The notice indicated a default judgment would be taken July 6, 1992. The first paragraph of the actual Judgment of Foreclosure,[4] however, recites the matter "came on for trial" July 20, not July 6, 1992. Approximately three weeks later, on July 28, 1992, a Notice of Foreclosure Sale was issued stating the foreclosed property would be sold September 2, 1992.

FCS recounts all documents pertaining to the default, acceleration, and foreclosure proceedings were prepared with Debtor's last known address, "Box 135," Tripp, South Dakota, the address on file with FCS and the address shown on UCC statements filed with the Secretary of State. When Debtor filed this Chapter 12 petition for relief August 17, 1992, "Box 165" was listed as the current mailing address.

A Chapter 12 plan of reorganization was filed December 10, 1992, prompting FCS to file both an objection to confirmation[5] and a motion for relief from the stay. On January 27, 1993, an evidentiary hearing

---

1. The terms of the agreement required annual payments beginning on or before January 1, 1989, and ending with a final payment on or before January 1, 2013.

2. The notice of default was sent certified mail, and Debtor signed for its receipt when delivered March 19, 1992.

3. In South Dakota, a foreclosure action begins by filing a complaint and serving it on the debtor. S.D.C.L. § 21–47–1. The complaint must contain a "short and plain" statement of the claim as well as a demand for judgment which the mortgagee believes is appropriate. S.D.C.L. § 15–6–8(a)(1), (2). In this case, Debtor was personally served by the Deputy Sheriff of Hutchinson County May 7, 1992. The foreclosure suit, Civil Case No. 92–19, was filed with the Clerk of Court in the First Judicial Circuit,

Hutchinson County, South Dakota, naming Farmers and Merchants State Bank, Marvin Ebright, and Agripro Biosciences, Inc., as additional defendants. A Notice of Lis Pendens was filed this same date.

4. Foreclosure of Judgment was entered July 23, 1992.

5. The proposed plan would amortize the debt owed to FCS over a 25–year period, calling for equal annual installments. FCS presented several reasons for objecting to plan confirmation, including the lack of any provision to cure the default and the fact that the first payment to FCS would not be due until one year after the date of confirmation, a circumstance characterized as "unreasonable" and "not in conformance with the terms and conditions of the note and mortgage."

was held on the motion for relief,[6] after which, the Court took the matter under advisement and issued a briefing schedule for submitting written arguments.

## ARGUMENTS AND ISSUES

In its initial brief in support of the motion for relief, FCS provides authority to show that in addition to creating and defining property interests, state law also determines when those interests, formulated as a mortgage relationship, are dissolved. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Justice v. Valley National Bank*, 849 F.2d 1078 (8th Cir.1988). FCS also refers to this Court's decision wherein a state foreclosure judgment was held to extinguish a mortgage relationship to prevent a Chapter 13 debtor from curing a mortgage default and modifying a secured creditor's rights under 11 U.S.C. § 1322(b)(2). *In re Feimer*, 131 B.R. 857 (Bankr.D.S.D.1991). FCS argues this line of authority, coupled with the fact Section 1222(b)(2) is substantively identical to Section 1322(b)(2), constitutes cause to terminate the stay in this proceeding. FCS also contends Debtor's resistance, which relies on *In re Easton*, 882 F.2d 312 (8th Cir.1989), is misplaced since those facts are not analogous here. In *Easton*, relief from the stay was granted to permit a post-petition sheriff's sale, but due to the mortgagee's acts of bad faith, the sale was set aside. FCS concludes no parallel acts of bad faith or wrongful conduct exist in this case to authorize the Court to set aside the foreclosure judgment.

In response to the motion, Debtor explains FCS is adequately protected since Debtor is physically maintaining the property and financially maintaining insurance coverage. Debtor also asserts the subject property is needed for an effective reorganization, and because Congress intended

"to allow young farmers the opportunity to reorganize their indebtedness," foreclosure sale should be prevented. Bolstering the response, Debtor's brief characterizes the foreclosure proceedings "fatally flawed," rendering the foreclosure judgment void ab initio, and thus preventing any extinguishment of Debtor's rights in the subject property. Debtor finds the proceedings flawed since the default and foreclosure documents were incorrectly addressed to Debtor at "Box 135" rather than "Box 165" and because the notice of intent to obtain a default judgment referred to a July 6, 1992, foreclosure hearing, yet, the actual foreclosure judgment states the hearing was July 20, 1992. Debtor maintains these irregularities are of such magnitude as to allow the Court to use its equitable powers to set aside the foreclosure judgment so that Debtor can reinstate the mortgage and effectuate a successful Chapter 12 reorganization in connection with this land.

In reply, FCS argues the address issue is immaterial since Debtor received personal service of the Summons and Complaint, ignored the notice regarding failure to respond to the Summons and Complaint, and failed to allege non-receipt of the Notice of Intent to Take Default Judgment, which, FCS adds, was basically a courtesy, non-mandatory mailing inasmuch as S.D.C.L. § 15–6–55(b)[7] only requires written notice of the application for default judgment *if* the defaulting mortgagor has answered or appeared in the action—conditions this debtor never fulfilled. *National Surety Corporation v. Shoemaker*, 195 N.W.2d 134 (S.D.1972); *Mushitz v. First Bank of South Dakota*, 457 N.W.2d 849 (S.D.1990).

## DISCUSSION

▮ The Bankruptcy Code provides that any party seeking a termination of the stay "has the burden of proof on the issue of the debtor's equity in property." 11 U.S.C.

---

**6.** As of January 27, 1993, Debtor's indebtedness totalled $34,396.62, including a default sum of $8,117.26.

**7.** In relevant part, S.D.C.L. § 15–6–55(b) states: "If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing on such application."

§ 362(g)(1). The Court finds FCS has met this burden by achieving foreclosure judgment to extinguish the mortgage relationship.[8]

In *Justice v. Valley Nat'l Bank,* the issue before the Eighth Circuit Court of Appeals was whether a Chapter 12 plan could be confirmed when foreclosed property, previously sold at sheriff's sale, would be redeemed under the plan, but over a period of time that would extend beyond the state statutory period of redemption. *Justice,* 849 F.2d at 1080. The court determined that absent conflict between state and federal law and absent federal interests requiring a different result, state law controls rights of redemption. *Id.* at 1084. Finding no conflict or special federal interest, the Eighth Circuit held 11 U.S.C. § 1222(b)(2), (3), and (5) did not preempt state law in this area, therefore, the plan could not be confirmed. *Id.* at 1088. Congressional intent explains when the curing provisions of the Bankruptcy Code apply: "Congress evidenced its intent to provide additional relief for defaulting mortgagors only as long as the contractual relationship continues, and to allow state law to control when that relationship is dissolved." *Id.* at 1085.

■ Relying on *Justice* to examine and interpret mortgage dissolution under two South Dakota methods of foreclosure, this Court determined foreclosure "by action" could terminate a mortgage relationship at the time of judgment. *In re Feimer,* 131 B.R. at 857; *see* S.D.C.L. Ch. 21–47. A similar interpretation was made in *In re First Federal Savings and Loan v. Clark Investment Company,* 322 N.W.2d 258 (S.D.1982), when the South Dakota Supreme Court reversed that part of a judgment requiring rents from foreclosed property to be paid to the foreclosing creditor during the time period of judgment

through redemption. These decisions indicate foreclosure judgment is the significant event that signals the practical conclusion of foreclosure by action. Although foreclosure sale is related, it is really only a separate, procedural aspect of foreclosure by action. On the other hand, foreclosure sale *is* necessary to terminate the mortgage relationship if foreclosure "by advertisement" is used, since a judgment is never obtained under this second method of foreclosure. *See* S.D.C.L. Ch. 21–48.

■ Applying this case law and analysis to the fact that FCS used foreclosure by action to obtain a default judgment against Debtor, the Court concludes that at the time Debtor filed this bankruptcy petition for relief, only the statutory right of redemption remained.[9]

Section 362(g)(2) provides that Debtor, as the party opposing the motion for relief, "has the burden of proof on all other issues," namely, whether the Court should set aside the foreclosure judgment. Debtor relies on the Eighth Circuit's decision in *In re Easton* to sustain this burden. In *Easton,* several events occurred during the gap of time between the date of foreclosure judgment and the scheduled date of foreclosure sale: debtors prepared and filed a Chapter 12 plan of reorganization, a confirmation hearing was held, and the court granted an oral, provisional confirmation after it was advised the bank and debtors had agreed to make certain amendments to the plan. *In re Easton,* 882 F.2d at 313. Three days before the scheduled sale date, debtors mailed the amended plan, but due to an intervening holiday, the plan was not actually filed until the day set for sale. *Id.* at 314. Since the bank felt the amendments did not conform to the court's requirements, the sale was held. *Id.* The

---

**8.** S.D.C.L. § 21–47–17 states:

"Except as provided by § 21–47–16, a foreclosure by action of a mortgage upon real estate operates as a complete extinguishment, satisfaction and payment of the debt secured by the mortgage. However, a foreclosure may not be considered to be satisfaction of an

assignment of rents agreement under the mortgage."

**9.** S.D.C.L. Ch. 21–52 contains provisions on redemption. S.D.C.L. § 21–52–11 states "all persons entitled to redeem shall in all cases have one year from the date of sale in which to redeem. . . ."

Eighth Circuit affirmed the bankruptcy court's use of 11 U.S.C. § 105 to set aside the sale since "unusual and compelling circumstances, namely the bad faith actions taken by the bank," were evidenced by a number of factors, including the bank's implicit knowledge at the confirmation hearing that the plan would be confirmed once the amendments were made, plus the fact the bank received a copy of the amended plan one day before the sale but went ahead with the sale anyway. *Id.* at 315.

 Although Debtor believes *In re Easton* is on point with the facts of this case, the Court concludes there are no "unusual, compelling, or egregious" facts similar to the bad faith acts of the bank in *Easton.* Using an outdated post office box number does not "fatally flaw" an entire foreclosure process, especially when the facts indicate the debtor personally signed for the mailed default notice, personal service was used for the summons and complaint, and a non-mandatory notice of intent to obtain foreclosure judgment was mailed and presumably received. The outdated address may be a snag in form, but the foreclosure process is not a resulting substantive fatality. Likewise, there is insufficient harm, if any, in the discrepancy between foreclosure hearing dates, especially when the notice indicated a hearing date two weeks sooner than the date referred to in the actual judgment, as opposed to the other way around. Indeed, Section 105(a) of the Bankruptcy Code provides broad general powers of equity, but there are limits: equity must be exercised consistently with the provisions of the Bankruptcy Code. *Johnson v. First Nat'l Bank of Montevideo, Minn.,* 719 F.2d 270, 273 (8th Cir.1983). And as cited in Debtor's brief, bankruptcy courts must, in addition, look to the substance of a particular transaction, as opposed to the form, when deciding to exercise the broad grant of equitable powers provided by Section 105(a). *In re Global Western Development Corp.,* 759 F.2d 724, 727 (9th Cir. 1985). This Court has done so and con-

cludes no inequity or injustice exists to set aside this foreclosure judgment. It is evident throughout the entire foreclosure process that Debtor intended to choose a course of "do-nothing," as evidenced by the lack of any acknowledgement, answer, appearance, or appeal. Even though Debtor may be relatively young and legally unsophisticated, he should have recognized the seriousness of the problem and acted accordingly if he expected to retain any meaningful rights in the subject real property. *Justice,* 849 F.2d at 1086.

## CONCLUSION

 In this case, state foreclosure proceedings by action dissolved the mortgage relationship between FCS and Debtor. By the time.Debtor became concerned and involved, the only remaining right he had in the subject property was the statutory right to redeem. The Court does not find that FCS obtained a fatally flawed foreclosure judgment, and even though an outdated address was used on foreclosure documents and a discrepancy was shown as to the proper foreclosure hearing date, these factors are not "unusual, compelling, or egregious" enough to invoke the equitable powers of Section 105(a) to permit the Court to set aside the judgment and allow Debtor to reinstate the mortgage and cure the default under the provisions of 11 U.S.C. § 1222(b)(5). Therefore, the Court finds FCS is entitled to relief from the automatic stay to complete the foreclosure sale. The Court shall enter an appropriate order.